# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-1999

SCOTT HEGWOOD, et al.,

*Plaintiffs-Appellants*,

*v.*

CITY OF EAU CLAIRE, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 09 C 350—**William M. Conley**, *Chief Judge*.

ARGUED JANUARY 20, 2012—DECIDED APRIL 9, 2012

Before FLAUM and ROVNER, *Circuit Judges*, and CASTILLO,
*District Judge*.[*]

FLAUM, *Circuit Judge*. The Nasty Habit Saloon (the
"Nasty Habit"), a popular bar operating in Eau Claire,
Wisconsin, lost its liquor license after a series of alter-
cations between its employees and its customers re-

---

[*] The Honorable Ruben Castillo, United States District Court
for the Northern District of Illinois, sitting by designation.

quiring police intervention. The Nasty Habit's license was revoked pursuant to Wis. Stat. § 125.12(2)(ag)(2), which provides that a liquor license can be revoked or suspended if the holder "keeps or maintains a disorderly or riotous, indecent or improper house." Scott Hegwood, an agent of the Nasty Habit, challenges the "disorderly house" statute arguing that it is unconstitutionally vague. The district court rejected Hegwood's arguments.

For the reasons set forth below, we affirm.

## I. Background

This dispute arose out of action taken by the City of Eau Claire, Wisconsin (the "City") against the Nasty Habit, a popular bar among the college-aged crowd. Despite its popularity, a number of raucous incidents caused the City concern. Specifically, during 2005, there were repeated disturbances involving drunk patrons and fights between customers and Nasty Habit employees. On September 19, 2005, Hegwood met with City officials to discuss their concerns regarding the operation of the Nasty Habit. The City's worries included the Nasty Habit's failure to have uniformed employees, and its failure to properly train its employees and maintain a customer head-count. After the meeting, Hegwood agreed to make certain changes.

On November 1, 2005, police were called to intervene in an altercation between an unruly customer and the bar's staff. Following that incident, on December 21, 2005, the City sent Hegwood a letter concluding that the Nasty Habit was a "disorderly house" as defined by

statute, and cataloguing several incidents supporting its conclusion. Pursuant to Wis. Stat. § 125.12(2)(ag)(2), a liquor license holder may have its license revoked if the license holder "keeps or maintains a disorderly or riotous, indecent or improper house." The letter also noted that despite the promise of change, the bar's policies had not noticeably improved. The City gave an ultimatum: voluntarily close for three weeks or the City would seek suspension or revocation of the bar's alcohol license before the City's Administrative Review Board. Hegwood rejected the offer of a temporary suspension.

Unfortunately, the situation at the Nasty Habit did not improve. On January 23, 2006, a customer was sent to the hospital for detoxification, and soon afterward, on February 11, 2006, another fight broke out at the bar, again involving both staff and patrons.

On March 1, 2006, the City issued a summons and complaint, filed by Chief of Police Jerry Matysik and City Attorney Stephen Nick, seeking revocation or suspension of the Nasty Habit's Combination Class B Intoxicating Liquor & Fermented Malt Beverage license. The complaint alleged that Nasty Habit employees kept a "disorderly house" as defined by Wis. Stat. § 125.12(2)(ag)(2), and thereby posed a threat to the health, safety, and welfare of the public under Wis. Stat. § 62.11(5).[2] The City's complaint was based on eight

---

[2] Pursuant to statute, "[t]he council shall have the management and control of the city property, finances, highways, navigable

(continued...)

incidents which occurred between November 20, 2003 and February 11, 2006. The majority of the incidents, however, related to events during the late spring and summer of 2005, all of which required some level of police intervention. The complaint primarily detailed fighting between patrons, bouncers, and other Nasty Habit employees. The City Council conducted an administrative hearing on the complaint, and subsequently revoked the Nasty Habit's alcohol license, concluding that it kept or maintained a "disorderly house" in violation of state law. An appeal of the revocation was filed, but dismissed by stipulation so that Nasty Habit, Inc. could sell its bar business.

Following the appeal's dismissal, Hegwood filed suit in the Western District of Wisconsin alleging retaliation, denial of equal protection, and due process violations. The district court granted defendants' motion for summary judgment in its entirety. Hegwood now appeals, but limits his challenge to his alleged due process violations.

---

[2] (...continued)
waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language." Wis. Stat. § 62.11(5).

## II. Discussion

We review the constitutionality of a statute, a question of law, de novo. *United States v. Moore*, 644 F.3d 553 (7th Cir. 2011). Hegwood challenges the Wisconsin statute on two grounds, arguing that the statute is unconstitutionally vague both on its face, and as applied to the Nasty Habit. Specifically, he contends that its vague language rendered compliance impossible, and enforcement arbitrary.

The void for vagueness doctrine rests on the basic due process principle that a law is unconstitutional if its prohibitions are not clearly defined. *Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 519 (7th Cir. 2010). The due process clause, though, does not demand "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Rather, a statute is only unconstitutionally vague "if it fails to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and it fails to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner." *Fuller ex rel. Fuller v. Decatur Public School Bd. of Educ. Sch. Dist. 61*, 251 F.3d 662, 666 (7th Cir. 2001).

### A. Vague As-Applied to The Nasty Habit

We begin and end our discussion with Hegwood's as-applied challenge. As this court has recognized, "it is a proper exercise of judicial restraint for courts to adjudicate as-applied challenges before facial ones in an

effort to decide constitutional attacks on the narrowest possible grounds and to avoid reaching unnecessary constitutional issues.*" Doe v. Heck*, 327 F.3d 492, 527-28 (7th Cir. 2003) (citing *Commodity Trend Serv., Inc. v. Commodity Futures Trade Comm'n*, 149 F.3d 679, 689 n. 5 (7th Cir. 1998). When we are confronted with an as-applied challenge, we examine the facts of the case before us exclusively, and not any set of hypothetical facts under which the statute might be unconstitutional. *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

The statute at issue, Wis. Stat. § 125.12(2)(ag)(2), delineates revocation provisions regarding liquor licenses, and articulates the state's regulatory authority to license and monitor those businesses which sell alcohol in Wisconsin.[3] Specifically, the statute states that a liquor license can be revoked or suspended if a liquor license holder "keeps or maintains a disorderly or riotous, indecent or improper house." These terms are not defined.[4] The statute's legislative purpose concerns the

---

[3] Wisconsin has this authority pursuant to Wis. Stat. § 62.11(5).

[4] Though we must exercise caution when consulting a dictionary for plain meaning, *United States v. Costello*, 666 F.3d 1040, 1043-44 (7th Cir. 2012), we note the following definitions: "riotous"—"in the nature of a riot; turbulent" ; "disorderly"—"conduct offensive to public order"; "indecent"—"grossly improper or offensive"; "improper"—"not in accord with propriety, modesty, good manners, or good taste." *See* MERRIAM-WEBSTER DICTIONARY ONLINE, Dic-

(continued...)

health and safety of the public, and its enforcement is aimed at public health.[5]

Reviewing the allegations in the City's complaint against the Nasty Habit, we are confronted with a disturbing pattern of violence and disruptive behavior. In 2003 and 2004, the Nasty Habit saw two troublesome incidents: in one instance, a Nasty Habit employee ushered underage girls into the Nasty Habit's basement to hide from police officers conducting a bar check; on another night, a Nasty Habit employee repeatedly punched a customer in the face. The following year was more tumultuous. The Nasty Habit saw trouble twice in May 2005. First, a Nasty Habit employee fought with a customer, refused to respond to police officers at the scene, and was tasered. Later that month, Nasty Habit employees violently ejected a customer using a chokehold, resulting in a fight, and arrests. Then, in July 2005, a Nasty Habit employee, again, punched a customer in the face. Predictably, a fight broke out. November saw more trouble. On November 1, 2005, one employee was involved in a fight with a customer—when police arrived, another employee assisted him in hiding in the basement. Soon after, in

---

[4] (...continued)
tionary, http://www.merriam-webster.com (last visited April 5, 2012).

[5] The "General Provisions" section of Wis. Stat. § 125, "Alcohol Beverages", states in part, that the legislature intended to provide "regulatory authority. . . for the benefit of the public health and welfare." § 125.01.

January 2006, a customer was over-served and taken to the hospital for detoxification. Finally, in February 2006, there was another brawl involving Nasty Habit employees and patrons. One customer was kicked in the face, and there was a large pile-up of employees and patrons; a Nasty Habit employee was arrested.

Considering this background, we cannot conclude that the disorderly house statute was unconstitutionally applied to the Nasty Habit. As the district court correctly observed, under any interpretation of the statute, the Nasty Habit is "something less than [an] ideal candidate[ ] to challenge the boundaries of Wisconsin's disorderly house statute." Indeed, there is no doubt that the conduct described above was disorderly, riotous, indecent or improper: employees fought with patrons; brawls spilled onto the streets; underaged girls hid in the basement to escape police detection; and a patron required detoxification because he was over-served.[6] Such behavior falls squarely within the ambit of the statute, particularly given the public health and safety concerns involved.

### B. Facial Vagueness

To succeed on a facial vagueness challenge, a complainant must demonstrate that the law is impermissibly

---

[6] Moreover, Hegwood was put on notice that the City was concerned about the events at the Nasty Habit, yet the fighting continued and the policies that troubled the City remained unchanged.

vague in all of its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982). As we have concluded that Wis. Stat. § 125.12(2)(ag)(2) is not unconstitutionally vague in its as-applied context with regard to the Nasty Habit, there is no need to examine Hegwood's facial attack; it cannot succeed as we have identified that the statute is sufficiently defined in at least one application.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for the defendants.