*Supp. 4 Opinion
RICCIARDULLI, Acting P. J.
I. INTRODUCTION
Defendant Noe Iniguez appeals the judgment of conviction following a jury trial. Defendant was convicted of two counts of violating a restraining order (Pen. Code, § 273.6, subd. (a)),[1] and one count of distributing a private image (§ 647, subd. (j)(4)). Defendant contends on appeal that section 647, subdivision (j)(4), is unconstitutionally vague and overbroad, the court misin-structed the jury, there was insufficient evidence to support the convictions, and the prosecutor committed misconduct during closing argument. As discussed below, we affirm.
II. FACTS
At trial, Jennifer Fajardo testified she dated defendant off and on for four years, and although the relationship ended in 2011, defendant continued to contact her by repeatedly e-mailing her, texting her, and coming by her house. Fajardo sought a restraining order, and a three-year restraining order prohibiting defendant from harassing, attacking, striking, or directly or indirectly contacting her was issued by the court. Fajardo worked as a secretary and bookkeeper for a painting contractor’s company, and also acted as the administrator of the company’s Facebook page. Whenever someone would post a message on her employer’s Facebook page, Fajardo would receive an e-mail notification- alerting her of the posting.
On December 12, 2013, Fajardo received an e-mail regarding a posting and immediately accessed the company’s Facebook page. On the page, Fajardo saw a post with defendant’s name, indicating he was the person who posted the message. Fajardo testified the post stated defendant “[c]ailed Jennifer and I was trying to get your services and she started flirting with me. I don’t want that kind of trick by a cunt, c-u-n-t. I’m a serious man and I’m not trying to get a hooker, I just wanted to hire you.”
On the same date, Fajardo was alerted to another post on the company’s Facebook page. The posting had the same text as the previous one posted by defendant. Instead of defendant’s name, however, it indicated it was posted by “Nizon F. Cush.”[2]
*Supp. 5 On March 28, 2014, Fajardo got an e-mail about another Facebook post. This one was posted by “Nizon F. Cush” in Spanish. Fajardo translated it into English as stating, “Good job, but please laid [sic] off,” and, “Slut, Jennifer Fajardo.” The post also included a photograph of Fajardo at a beach without a shirt showing her bare breasts.[3]
Fajardo testified the photograph of her at the beach was taken by defendant using a digital camera in 2010 or 2011 while they were still dating. Defendant and Fajardo understood at the time the photo was taken that it would “remain just between” the two of them, and “that it wasn’t going anywhere.” Defendant transferred this photograph and others he had taken of Fajardo onto his computer, and the two of them had “promised to erase them when everything was over, and that they would never be published anywhere.”
Fajardo testified she felt embarrassed and afraid upon seeing the post that included the photograph showing her breasts, because she believed nothing between her and defendant could now be hidden. Although her employer’s project manager and not her boss had learned of the post, she was concerned about losing her job. Fajardo testified, “It’s been so hard for me going to work thinking that my boss is going to tell something and I’m afraid to lose my job as well.” Fajardo further testified the post “made me feel bad, to the point that I even told my mother that all I wanted to do was go get in the car and go kill myself.” Although she believed she needed psychological help due to the posting, she had not seen a professional because she did not have money to pay for a doctor.
III. DISCUSSION
A. Constitutionality of Section 647, Subdivision (j)(4)
Defendant argues section 647, subdivision (j)(4), is unconstitutional because it is vague, thereby violating due process of law under the United States and California Constitutions (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 7), and overbroad, violating the right to free speech (U.S. Const., 1st Amend.). “We review the constitutionality of a statute de novo. [Citation.]” (In re Brian J. (2007) 150 Cal.App.4th 97, 124 [58 Cal.Rptr.3d 246].)
*Supp. 6 (1) Due process
Due process of law is based on the “concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders. [Citation.] These protections ... are often referred to collectively as the ‘fair warning’ rule. [Citations.]” (People v. Castenada (2000) 23 Cal.4th 743, 751 [97 Cal.Rptr.2d 906, 3 P.3d 278].) “The vagueness doctrine bars enforcement of ‘ “a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.” [Citation.]’ [Citation.] A vague law ‘not only fails to provide adequate notice to those who must observe its strictures, but also “impermissibly delegates basic policy matters to [law enforcement], judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.” [Citation.]’ [Citation.] In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that ‘abstract legal commands must be applied in a specific context,’ and that, although not admitting of ‘mathematical certainty,’ the language used must have ‘ “reasonable specificity.” ’ [Citation.]” (In re Sheena K. (2007) 40 Cal.4th 875, 890 [55 Cal.Rptr.3d 716, 153 P.3d 282], some italics omitted.)
Defendant was convicted of committing a 2014 violation of section 647, former subdivision (j)(4). At that time the statute provided, in relevant part, that every person who committed any of the following acts was guilty of a misdemeanor: “(A) Any person who photographs or records by any means the image of the intimate body part or parts of another identifiable person, under circumstances where the parties agree or understand that the image shall remain private, and the person subsequently distributes the image taken, with the intent to cause serious emotional distress, and the depicted person suffers serious emotional distress. [¶] (B) As used in this paragraph, intimate body part means any portion of the genitals, and in the case of a female, also includes any portion of the breasts below the top of the areola, that is either uncovered or visible through less than fully opaque clothing.” (§ 647, former subd. (j)(4).)[4]
Defendant argues the statute is vague because it “fails to specify the nature of the agreement and understanding] the parties must reach before a person *Supp. 7 can legally ‘distribute’ the image,” and “fails to notify a person what constitutes ‘private.’ ” The terms of the statute, however, are not such that a person of common intelligence would be required to guess at their meaning. Similarly, those of common intelligence would not differ as to its application, and its terms do not lend themselves to arbitrary and discriminatory application. The images subject to the statute are those of intimate body parts, including genitals and female breasts. The agreement or understanding referred to in the statute simply reflects that it is reasonable for individuals to concur with one another that such images not be distributed to other persons. Pictures of these body parts are commonly understood to be private, meaning not to be seen by the general public absent consent given by the party being depicted. Read in the specific context of the statute, the terms used in section 647, former subdivision (j)(4) provided a person with reasonable specificity, thereby comporting with due process.
(2) First Amendment
“The First Amendment to the United States Constitution states: ‘Congress shall make no law . . . abridging the freedom of speech . . .’ ” and applies to the states under the due process clause of the Fourteenth Amendment (Aguilar v. Avis Rent A Car System, Inc. (1999) 21 Cal.4th 121, 133-134 [87 Cal.Rptr.2d 132, 980 P.2d 846]). Under the overbreadth doctrine, “litigants may challenge a statute not because their own rights of free expression are violated, but because the very existence of an overbroad statute may cause others not before the court to refrain from constitutionally protected expression. [Citations.]” (In re M.S. (1995) 10 Cal.4th 698, 709 [42 Cal.Rptr.2d 355, 896 P.2d 1365].) To avoid being unconstitutionally over-broad, “statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. [Citations.]” (Broadrick v. Oklahoma (1973) 413 U.S. 601, 611-612 [37 L.Ed.2d 830, 93 S.Ct. 2908].) The overbreadth doctrine “is, manifestly, strong medicine” which has been used “sparingly and only as a last resort.” (Id. at p. 613.)
Defendant argues the statute is overbroad because it “arbitrarily forecloses to any person the right to distribute legally taken photographs of certain images,” and it applies to “almost any photographs of ‘intimate body parts.’ ” Assuming, without deciding, a person has a free speech right to distribute photographs and other captured images, section 647, former subdivision (j)(4), was not overbroad because it was narrowly drawn and it protected a compelling public interest.
As it read in 2014, section 647, former subdivision (j)(4) only barred a person who photographed or recorded the image from distributing it, when *Supp. 8 such a person had the intent to cause serious emotional distress. The requirement that a person intend to cause distress served to narrow the law (see Stark v. Superior Court (2011) 52 Cal.4th 368, 391 [128 Cal.Rptr.3d 611, 257 P.3d 41]), rendering it inapplicable, for example, if the person acted under a mistake of fact or by accident (see § 26 classes Three & Five).
Furthermore, it is not just any images that are subject to the statute, but only those which were taken under circumstances where the parties agreed or understood the images were to remain private. “The government has an important interest in protecting the substantial privacy interests of individuals from being invaded in an intolerable manner. [Citation.]” (People v. Astalis (2014) 226 Cal.App.4th Supp. 1, 8 [172 Cal.Rptr.3d 568].) It is evident that barring persons from intentionally causing others serious emotional distress through the distribution of photos of their intimate body parts is a compelling need of society. The statute was not overbroad because the limitations specified therein greatly narrowed its applicability, diminishing the possibility that it could lead persons to refrain from constitutionally protected expression, and it constituted “a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. [Citations.]” (Broadrick v. Oklahoma, supra, 413 U.S. at pp. 611-612.)
B. Jury Instructions
Defendant argues the court erred by failing to instruct the jury that a violation of section 647, subdivision (j)(4) must be “knowing”; failing to define “distributes” and “serious emotional distress”; failing to provide a unanimity instruction; and failing to instruct the jury pursuant to CALCRIM No. 358 that it should consider with caution any statements made by defendant tending to show his guilt. “We review de novo whether jury instructions state the law correctly. [Citation.]” (People v. Jackson (2010) 190 Cal.App.4th 918, 923 [118 Cal.Rptr.3d 623].)
(1) Elements of section 647, subdivision (j)(4)
The court instructed the jury regarding the elements of section 647, former subdivision (j)(4), as it read in 2014. This included that the People were required to prove defendant photographed an intimate body part of Fajardo under circumstances where he and Fajardo understood the image would remain private, and he “subsequently distributed the image with the intent to cause emotional distress.” The court further instructed the jury that the violation required “a specific intent,” and that to find a person guilty of the crime, “that person must not only intentionally commit the prohibited act, but must do so with the specific intent.” As indicated by the instruction on the elements of section 647, former subdivision (j)(4), the jury was required to determine if defendant had the specific intent to cause emotional distress.
*Supp. 9 As noted by defendant on appeal, the court did not instruct the jury that in order to be found guilty, the People had to prove defendant knew or should have known distribution of Fajardo’s image would cause serious emotional distress. The court was not required, however, to instruct the jury regarding knowledge, because it complied with the constitutional requirement of including a scienter element (see Elonis v. United States (2015) 575 U.S. _, _ [192 L.Ed.2d 1, 135 S.Ct. 2001, 2003]), by instructing the crime required specific intent, and the statute as it read' in 2014 did not explicitly specify such knowledge was needed.[5]
Contrary to defendant’s argument, the court was not required to define for the jury the terms “distributes” and “serious emotional distress” found in section 647, subdivision (j)(4). This is because there is no indication in the statute that the terms at issue were used in a “ ‘ “ ‘technical sense peculiar to the law’ ” ’ ” (People v. Jennings (2010) 50 Cal.4th 616, 670 [114 Cal.Rptr.3d 133, 237 P.3d 474]), and since “the terms defendant^ challenge[s] are words in common use and of common knowledge' . . . their definition [was] not necessary. [Citation.]” (People v. Hardy (1992) 2 Cal.4th 86, 153 [5 Cal.Rptr.2d 796, 825 P.2d 781]).
“[Distribute” is commonly defined as “to give or deliver (something) to people.” (Merriam-Webster Diet. Online <http://www.merriam-webster.com/dictionary/distribute> [as of Mar. 25, 2016];[6] see Wasatch Property Management v. Degrate (2005) 35 Cal.4th 1111, 1121-1122 [29 Cal.Rptr.3d 262, 112 P.3d 647] [“When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word.”].) The Oxford Dictionary defines “serious” as “[significant or worrying because of possible danger or risk; not slight or negligible.” (Oxford Diets. Online <http://www.oxforddictionaries.com/definition/english/ serious> [as of Mar. 25, 2016].) It defines “emotion” as relating to “strong feeling deriving from one’s circumstances, mood, or relationships with others”; (Oxford Diets. Online <http://www.oxforddictionaries.com/us/definition/english/ emotion> [as of Mar. 25, 2016]) and “distress” as “[e]xtreme anxiety, sorrow, or pain” (Oxford Diets. Online <http://www.oxforddictionaries.com/definition/ english/distress> [as of Mar. 25, 2016]). These are common terms and words which “can readily be understood by jurors” (People v. Manibusan (2013) 58 Cal.4th 40, 98 [165 Cal.Rptr.3d 1, 314 P.3d 1]) and therefore did not need to be defined in the court’s instructions.
*Supp. 10 (2), (3)*
[[Image here]]
C. Sufficiency of the Evidence
Defendant argues insufficient evidence was presented that defendant violated section 647, subdivision (j)(4), because there was a lack of proof he distributed Fajardo’s photograph and lack of proof she suffered any serious emotional distress. Defendant further argues there was insufficient evidence he violated the restraining order, because the People did not prove the order was issued under Family Code section 6218.
(1) The term “distributes”
Defendant argues that the term “distributes” in section 647, subdivision (j)(4)(A), should be defined to exclude posting an image on Facebook. He urges we adopt a dictionary definition of the word defining it to mean “[t]o deliver” (Black’s Law Diet. (9th ed. 2009) p. 543); or use the meaning contained in the federal statute barring distribution of child pornography, which requires transfer of the pornography to another person (18 U.S.C. § 2252); or use the meaning contained in state statutes barring distribution of child pornography, which require a transfer of possession (see, e.g., Pen. Code, § 313.1). Defendant argues posting an image on a social media site such as Facebook does not effectuate delivery of the image or transfer to a specific person. As discussed above, however, there is no indication in section 647, subdivision (j)(4), that the term “distribute^]” was intended to have a technical legal meaning, or to mean anything other than its commonly used and known definition of “to give or deliver (something) to people.” (Merriam-Webster Diet. Online <http://www.merriam-webster.com/ dictionary/distribute> [as of Mar. 25, 2016].)
Moreover, to the extent there is any ambiguity in the meaning of the term “distributes,” we may consult extrinsic evidence of intent, including the legislative history of the statute. (See People v. Yartz (2005) 37 Cal.4th 529, 538 [36 Cal.Rptr.3d 328, 123 P.3d 604].) Legislative analyses of the Senate bill that enacted section 647, subdivision (j)(4), are replete with indications that posting images on public Web sites was precisely one of the evils the statute sought to remedy.
One analysis stated, “ ‘ “Cyber revenge” is an invasive and increasingly common crime, which often involves the online posting of private or intimate *Supp. 11 photos of another person without the person’s consent. . . .’ ” (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 255 (2013-2014 Reg. Sess.) as amended Aug. 21, 2013, p. 2, italics added.) Another stated, “According to the author: [¶] ‘Cyber revenge’ or ‘revenge pom’ refers to the posting of illicit pictures of another person without his/her consent, often as retaliation following a bitter breakup between partners.” (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 255 (2013-2014 Reg. Sess.) as amended Sept. 3, 2013, pp. 4—5, italics added.) Yet another referred to an instance where naked photographs of an ex-spouse were posted without her authorization on a personal ads section of a Web site. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 255 (2013-2014 Reg. Sess.) as amended Aug. 21, 2013, pp. 4-5.) Completely absent from the legislative history is any indication that the statute should be limited to situations where a person delivered or transferred an image to another specific person.
“ ‘To determine whether sufficient evidence supports a jury verdict, a reviewing court reviews the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.’ [Citation.]” (People v. Johnson (2015) 60 Cal.4th 966, 988 [184 Cal.Rptr.3d 612, 343 P.3d 808].) The evidence Fajardo’s photograph was posted on a public Facebook page using an alias Fajardo knew was used by defendant constituted substantial evidence supporting defendant’s distribution of the photograph.
(2) The term “serious emotional distress”
Defendant argues the term “serious emotional distress” should also be given a specialized legal meaning, akin to the definition of “severe emotional distress” for the tort of intentional infliction of emotional distress. (See Coleman v. Republic Indemnity Ins. Co. (2005) 132 Cal.App.4th 403, 416 [33 Cal.Rptr.3d 744] [defining severe emotional distress as “outrageous” conduct which is “extreme” and going “ . beyond all possible bonds of decency [so as to be] regarded as atrocious, and utterly intolerable in a civilized community .”].) Defendant maintains there was insufficient evidence to establish Fajardo suffered such distress.
However, as discussed ante, there is no indication a specialized legal meaning was intended to be used instead of the commonly understood meaning of the term, such as a “significant” or “strong feeling” of “extreme *Supp. 12 anxiety, sorrow, or pain.” (See Oxford Diets. Online <http://www.oxford dictionaries.com/definition/english/serious> [as of Mar. 25, 2016]; Oxford Diets. Online <http://www.oxforddictionaries.com/us/definition/english/ emotion> [as of Mar. 25, 2016]; Oxford Diets. Online <http://www.oxford dictionaries.com/definition/english/distress> [as of Mar. 25, 2016].)
Yet, even if defendant’s proposed definition applied, the distress testified to by Fajardo constituted substantial evidence supporting this element of the crime. An image showing Fajardo’s bare breasts—which she believed would never be seen by anyone other than defendant—was posted on a Facebook page, and Fajardo now felt nothing between her and defendant could be hidden from the public. Fajardo was embarrassed, she worried about losing her job, believed she needed psychological help but lacked the money for treatment, and she felt so bad that she told her mother she wanted to “get in the car and go kill [herself].” Whether a common or specialized definition was used, this was all that was required to satisfy the element in question.
(3) Protective order*
[[Image here]]
D. Prosecutorial Misconduct*
[[Image here]]
IV. DISPOSITION
The judgment of conviction is affirmed.
B. Johnson, J., and Dymant, J.,† concurred.

 All further statutory references are to the Penal Code unless otherwise specified.

 Fajardo knew defendant sometimes used the aliases “Nizon F. Cush” and “Kush” because they referenced the fact he had a prescription to smoke marijuana. Fajardo had also seen a Facebook profile of “Nizon F. Cush” which had a picture of defendant and his daughters on it.

 Fajardo further testified that on March 28, 2014, she saw an additional post on the company’s Facebook page from “Nizon F. Kush” stating, “Fire this thief and dirty slut.” This post included a photograph of Fajardo wearing a shirt.
Fajardo deleted the posts immediately after she saw them. But, she first took photographs of the computer screen each time she viewed the posts.

 The current version of section 647, subdivision (j)(4)(A), is similar to the one in effect in 2014, providing it is a misdemeanor when a person “intentionally distributes the image of the intimate body part or parts of another identifiable person, or an image of the person depicted engaged in an act of sexual intercourse, sodomy, oral copulation, sexual penetration, or an image of masturbation by the person depicted or in which the person depicted participates, under circumstances in which the persons agree or understand that the image shall remain private, the person distributing the image knows or should know that distribution of the image will cause serious emotional distress, and the person depicted suffers that distress.”

 In contrast, the present version of section 647, subdivision (j)(4)(A), does specifically contain a knowledge component, providing it is required “the person distributing the image knows or should know that distribution of the image will cause serious emotional distress . . . .” (Italics added.)

 All subsequent internet dictionary definitions were accessed on March 4, 2016.

See footnote, ante, at page Supp. 1.

See footnote, ante, page Supp. 1.