NEUBAUER, C.J.
*228 ¶ 1 Norris W. Culver, Sr., appeals from a judgment convicting him of violating the "post or publish" of a private depiction statute and the felon-in-possession of a firearm statute and from an order rejecting his postconviction claims that those statutes are unconstitutional. Culver argues the "post or publish" statute is overbroad, vague, and violates the Commerce Clause. He also argues the felon-in-possession statute violates his constitutional right to bear arms because the felony he committed was nonviolent. We reject his challenges and affirm.
*229 BACKGROUND
¶ 2 Culver posted nude photos of A.A.L. online without her permission.[1] Culver admitted he posted the photos out of anger. A.A.L. told police Culver also was a felon who had firearms at his residence. Culver eventually admitted he had moved guns from A.A.L.'s residence to his garage. Three firearms were recovered. Culver was previously convicted of the felony of operating a motor vehicle while intoxicated (OWI) (fourth offense).
¶ 3 In June 2015, Culver was charged with one count of posting or publishing a private depiction of a person, as a repeater, contrary to WIS. STAT. §§ 942.09(3m)(a)2. (2013-14)[2] and 939.62(1)(a), and three counts of possession of a firearm by a felon, as a repeater, contrary to WIS. STAT. §§ 941.29(2) and 939.62(1)(b). In August, Culver entered a guilty plea to the "post or publish" count and to one count of felon-in-possession.[3]
¶ 4 In September 2015, the circuit court held a sentencing hearing. Per the plea agreement, the State did not make a specific recommendation. Culver requested probation or, alternatively, less than eighteen *107 months of initial confinement. On the "post or publish" count, a Class A misdemeanor, the circuit court imposed *230 nine months in jail. On the felon-in-possession count, the court imposed a three-year and three-month prison sentence (fifteen months of initial confinement and two years of extended supervision). The sentences were to run consecutively.
¶ 5 In July 2016, Culver moved for postconviction relief, asserting that (1) the "post or publish" statute is facially unconstitutional because it is overbroad, vague, and violates the Commerce Clause, and (2) the felon-in-possession statute is unconstitutional as applied to him because his right to bear arms should not be denied on account of a felony (fourth offense OWI) that was nonviolent.[4] After a hearing, the circuit court denied the motion. Culver appeals.[5]
DISCUSSION
The "Post or Publish" Statute
¶ 6 Because Culver challenges the "post or publish" statute on overbreadth grounds, we quote from it at length. WISCONSIN STAT. § 942.09(3m)[6] provides as follows:
(3m) (a) Except as provided in par. (am), whoever does any of the following is guilty of a Class A misdemeanor:
....
*231 2. Posts, publishes, or causes to be posted or published, a depiction of a person that he or she knows is a private representation, without the consent of the person depicted.
(b) This subsection does not apply to any of the following:
1. The parent, guardian, or legal custodian of the person depicted if the private representation does not violate [ WIS. STAT. §] 948.05 or 948.12 and the posting or publication is not for commercial purposes.
2. A law enforcement officer or agent acting in his or her official capacity in connection with the investigation or prosecution of a crime.
3. A person who posts or publishes a private representation that is newsworthy or of public importance.
4. A provider of electronic communication services that provides Internet access service to customers.
Subsection (1) of the statute defines several terms, including the following:
(bg) "Post or publish" includes posting or publishing on a Web site on the Internet, if the Web site may be viewed by the general public.
(bn) "Private representation" means a representation depicting a nude or partially nude person or depicting a person engaging in sexually explicit conduct that is intended by the person depicted in the representation to be captured, viewed, or possessed only by the person who, with the consent of the person depicted, captured the representation or to whom the person depicted directly and intentionally gave possession of the representation.
(c) "Representation" means a photograph, exposed film, motion picture, videotape, *108 other visual representation, or data that represents a visual image.
*232 Sec. § 942.09(1). The statute does not define "depiction."
Standard of Review and First Amendment Principles
¶ 7 The constitutionality of a statute is a question of law reviewed de novo. State v. Robert T. , 2008 WI App 22, ¶ 5, 307 Wis.2d 488, 746 N.W.2d 564.
¶ 8 The First Amendment of the United States Constitution states that "Congress shall make no law ... abridging the freedom of speech." Article I, section 3 of the Wisconsin Constitution states that "[e]very person may freely speak, write and publish his [or her] sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press." Despite the varied wording, we have construed our state constitution to provide the same protections as those provided by the federal constitution. Robert T. , 307 Wis.2d 488, ¶ 6, 746 N.W.2d 564. The federal protections also directly apply to the states via the Due Process Clause of the Fourteenth Amendment. Id.
Culver's Claim of Overbreadth
¶ 9 Culver does not contend the "post or publish" statute is unconstitutional as applied to him.[7] Rather, he contends it is overbroad and therefore unconstitutional on its face. A facial challenge allows a *233 person to argue a statute is unconstitutional even when his or her own First Amendment rights are not affected. See, e.g. , City Council of L.A. v. Taxpayers for Vincent , 466 U.S. 789, 798, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Whereas a typical facial challenge requires a showing "that no set of circumstances exists under which [the statute] would be valid," a less stringent standard is permitted when First Amendment rights are at stake. United States v. Stevens , 559 U.S. 460, 472, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (citation omitted). In this regard, a facial challenge for overbreadth must show "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Id. at 473, 130 S.Ct. 1577 (citation omitted). The challenger bears this burden. Virginia v. Hicks , 539 U.S. 113, 122, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).
¶ 10 Although a lesser burden than the "under no circumstances" standard, the substantiality standard is nonetheless steep and reflects the concern that "the [overbreadth] doctrine itself might sweep so broadly that the exception to ordinary standing requirements would swallow the general rule." Vincent , 466 U.S. at 799, 104 S.Ct. 2118. Invalidating a statute on its face by the call of "one whose own conduct may be punished despite the First Amendment" is "strong medicine" and should be used "sparingly" and "with caution." Robert T. , 307 Wis.2d 488, ¶ 7, 746 N.W.2d 564 (citation omitted); see also State v. Stevenson , 2000 WI 71, ¶ 14, 236 Wis.2d 86, 613 N.W.2d 90. Providing only a few examples of the potential infringement of protected speech will not suffice; frequent intrusions into areas of protected expression must be shown. See United States v. Matusiewicz, 84 F.Supp.3d 363, 367 (D. Del. 2015).[8]
*234 *109 ¶ 11 To analyze an overbreadth claim, a reviewing court must first construe the statute, as it is necessary to first know the statute's reach before determining if it reaches too far. Stevens , 559 U.S. at 474, 130 S.Ct. 1577. Our review of the "post or publish" statute, WIS. STAT. § 942.09(3m)(a)2., reveals that it has a specific, limited, and reasonable reach, and it does not infringe on protected expression in a substantial number of its applications in relation to its legitimate sweep.
¶ 12 The statute has multiple parameters, each of which winnows down its breadth. First, the statute requires a posting or publishing of a "private representation," a term which has several elements.[9] WIS. STAT. § 942.09(3m)(a)2. A "private representation" is limited to a representation depicting a person, and the person must be nude, partially nude, or engaged in sexually *235 explicit conduct.[10] Sec. 942.09(1)(bn). The scope of the statute is thus confined to images that can fairly be described as discreet and personal.
¶ 13 Second, if the image is of such a personal depiction noted above, "private representation" is further pared by the requirement of a specific intent. The depicted person must have intended the depiction to be captured, viewed, or possessed only by the specific person: either the person capturing the depiction or the person to whom the depicted person directly and intentionally gave the image. Id. In short, the depicted person intended the depiction to be held and viewed privately only by the specific person (or persons). If the depicted person did not intend the image to be private in this way, the image is beyond the reach of the statute.
¶ 14 Third, "private representation" also requires that the person who captures the representation do so "with the consent of the person depicted." Id. Thus, an image secretly captured is not a "private representation" and not within the ambit of the statute. Such secret recordings are the subject of WIS. STAT. § 942.09(2)(am).
¶ 15 Fourth, from this particular set of intentionally private images of a personal nature, the statute pertains only to those images that the publisher knows are private. WIS. STAT. § 942.09(3m)(a)2. That is, the publisher must know that the depicted person intended only the specific persons to view or possess the image. The statute does not apply to an image that, while in fact constituting a "private representation," was published by a person who was unaware that it was private.
*236 ¶ 16 Fifth, the statute filters out any publications that are consensual. That is, the statute only applies to a private image that is published "without the consent of the person depicted." Id. Stated otherwise, if the depicted person has consented to the *110 publication, the image is outside the scope of the statute.[11]
¶ 17 Sixth, even for a publication that meets all of the foregoing elements, the statute's reach is further limited by the exclusion of several types of private representations. A noncommercial publication by the depicted person's parent or guardian is not included, provided it does not constitute sexual exploitation or solicitation of a child under the criminal code. WIS. STAT. § 942.09(3m)(b)1. ; see WIS. STAT. §§ 948.05 and 948.12. Also, no publication by law enforcement is within the statute's scope, provided it is done in an official capacity as part of a criminal investigation or prosecution. Sec. 942.09(3m)(b)2. Further, no publication of a private representation that is "newsworthy or of public importance" is proscribed. Sec. 942.09(3m)(b)3. Finally, the statute does not apply to electronic communication companies that provide access to the internet. Sec. 942.09(3m)(b)4.
¶ 18 Given the many boundaries that hem in the area of proscribed conduct, we conclude the statute is not overbroad. The statute prohibits a certain and limited category of knowing conduct that involves the unauthorized use of personal, private images of another. It encompasses only a particular type of image, *237 which must be intended to be private, which must be captured with consent, which the publisher must know is private, and which is published without consent nonetheless. With its focused scope, we see no showing that the statute prohibits or even chills a substantial amount of free expression. The statute's restriction on such postings or publications does not raise a "realistic possibility that official suppression of ideas is afoot." R.A.V. v. City of St. Paul , 505 U.S. 377, 390, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).
¶ 19 We reach this conclusion mindful that the potential instances of infringement on expression must be judged in relation to the statute's legitimate sweep. See Stevens , 559 U.S. at 473, 130 S.Ct. 1577. Culver does not dispute that the statute has a plainly legitimate sweep. In prohibiting the knowing publication of intentionally private depictions of another person who is either nude, partially nude, or engaged in sexually explicit conduct, the statute serves to protect an important state interest-individual privacy. No one can challenge a state's interest in protecting the privacy of personal images of one's body that are intended to be private-and specifically, protecting individuals from the nonconsensual publication on websites accessible by the public. See State v. Jahnke , 2009 WI App 4, ¶ 9, 316 Wis.2d 324, 762 N.W.2d 696 ("By placing limits on the ability of others to record [a person in the nude without his or her consent under circumstances where he or she has a reasonable expectation of privacy], the statute [ WIS. STAT. § 942.09(2)(am) ] protects a person's interest in limiting, as to time, place, and persons, the viewing of his or her nude body."); see also People v. Iniguez , 247 Cal.App.4th Supp. 1, 202 Cal.Rptr.3d 237, 243 (2016) (emphasizing the government's "important interest in protecting the substantial privacy interests of individuals *238 from being invaded ... through the distribution of photos of their intimate body parts"). Further, when purely private matters are the subject at hand, free speech protections are less rigorous because such matters do "not implicate the *111 same constitutional concerns as limiting matters of public interest." Snyder v. Phelps , 562 U.S. 443, 452, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011).
¶ 20 Culver has the burden to show that the statute infringes on a substantial amount of protected speech and in relation to the statute's legitimate scope. Although he discusses many aspects of the statute that he believes support his argument, as we discuss next, he ultimately fails to carry his burden, as none of his examples can be described as anything more than limited or incidental, if that.
¶ 21 Culver argues the statute does not distinguish between "images that are posted or published with malice or wrongful intent, such as revenge or humiliation, and those that are not." He offers the example of a mother-in-law posting a photo of her daughter-in-law nursing a newborn without obtaining the daughter-in-law's consent. The mother-in-law's conduct would be unlawful, Culver contends.
¶ 22 Culver does not, however, cite any authority for the proposition that, to avoid a determination of overbreadth, such a statute must contain an element of scienter. Although the requirement of wrongful intent would have a limiting effect on a statute, the breadth of a statute can be effectively limited or curtailed through a variety of other criteria, elements, and conditions. As discussed above, the "post or publish" statute is indeed layered with required showings of intent, knowledge, and consent: The image must be captured with consent , it must be intended by the depicted person to remain private and the publisher *239 must know this to be true, but he or she publishes the image anyway without obtaining the consent of the depicted person. A wrongful intent is inherent in the act of publishing a profoundly personal image intended to be and known to be private and without consent.[12] Adding an express intent to harm element would hardly, if at all, reduce the scope of the statute.
¶ 23 Culver argues the statute does not distinguish between images that cause harm and those that do not. He relies on State v. Hemmingway , 2012 WI App 133, ¶ 18, 345 Wis.2d 297, 825 N.W.2d 303, where we upheld the constitutionality of the stalking statute, WIS. STAT. § 940.32(2), against an overbreadth challenge. In that case, we stated that, although some speech may be used in the commission of the crime of stalking, "the core of the statute is the stalker's intent to engage in conduct" that causes distress and fear. Hemmingway , 345 Wis.2d 297, ¶ 18, 825 N.W.2d 303. But Hemmingway was not actually addressing the scope of the statute. Rather, we concluded that the statute prohibited conduct, not speech, and therefore the challenge did not implicate free speech rights in the first instance. Id. , ¶¶ 12, 13, & 16.
¶ 24 Moreover, even if a level of harm was somehow necessary to avoid overbreadth, the "post or publish" statute satisfies that standard. Under the *240 statute, the depicted person does not want his or her private image shared, much less published. The unconsented publication of a private representation of a person while nude, semi-nude, or engaged in sexually explicit *112 activity is presumptively distressing and harmful.[13]
¶ 25 Culver argues the statute's definition of nudity is too broad and "includes images that are commonplace, non-obscene, and do not implicate personal privacy interests." His brief displays two photographs of female celebrities wearing revealing outfits at a plainly public occasion, suggesting the images would fit the definition of "[n]ude or partially nude person." We need not analyze in detail the definition of "[n]ude or partially nude person," other than to note that the definition appears to be reasonably in line with the common understanding of those terms and with the type of image the State has a legitimate interest in protecting. See WIS. STAT. §§ 942.08(1)(a) & 948.01(7). Regardless of precisely how those terms are defined, whether an image is private depends upon the depicted person. The more commonplace or unrevealing an image is, the less likely the depicted person will intend it to be private, making the statute inapplicable. The celebrities pictured in Culver's brief, who are clearly and deliberately appearing in public at "red carpet" events (and are likely encircled by photographers), obviously had no intent that the photos taken would be private.[14]
*241 ¶ 26 Culver criticizes the statute's failure to explain what happens if an image is published with consent, but the consent is later withdrawn. Culver questions whether the publisher would become criminally liable at that point. He does not explain, however, why this hypothetical tends to make the statute overbroad. We will not venture a guess. Although it is appropriate, and often necessary, to pose hypotheticals in mounting a facial challenge, the hypotheticals must point up situations where the statute impermissibly infringes on protected speech. Culver does not connect his hypothetical to a First Amendment violation.
¶ 27 Culver further asserts that the exclusions for images that are "newsworthy" or "of public importance" are "unclear." But he fails to suggest how they make the statute overbroad. This argument is more appropriately addressed (and we do so) with his claim that the statute is void for vagueness. Indeed, putting aside the exact scope of "newsworthy" and "of public importance," the statute uses these terms to narrow the breadth of the statute-images that are "newsworthy" or "of public importance" are excluded.[15]
*113 *242 Culver's Claim of Vagueness
¶ 28 Culver argues the "post or publish" statute is also unconstitutional because it is vague. Because the constitutionality of a statute is a question of law, we review it de novo. State v. Nelson , 2006 WI App 124, ¶ 35, 294 Wis.2d 578, 718 N.W.2d 168. We presume the statute is constitutional, putting the burden on the challenger to show otherwise. Id.
¶ 29 The "void for vagueness" doctrine is grounded in procedural due process. See United States v. Prof'l Air Traffic Controllers Org. , 678 F.2d 1, 3 (1st Cir. 1982). The "doctrine rests on the basic due process principle that a law is unconstitutional if its prohibitions are not clearly defined." Hegwood v. City of Eau Claire , 676 F.3d 600, 603 (7th Cir. 2012). A statute may be unconstitutionally vague in two ways: if it fails to give adequate notice of the proscribed conduct or if it permits a decision maker to enforce it arbitrarily. Nelson , 294 Wis.2d 578, ¶¶ 35-37, 718 N.W.2d 168.
¶ 30 With regard to adequate notice, the statute must "sufficiently warn people who wish to obey the law that their conduct comes near the proscribed area." Nelson , 294 Wis.2d 578, ¶ 36, 718 N.W.2d 168. The prohibited *243 conduct must be spelled out with sufficient clarity to afford understanding by ordinary people. Hegwood , 676 F.3d at 603 (citation omitted). But the statute "need not define with absolute clarity and precision what is and what is not unlawful conduct." Nelson , 294 Wis.2d 578, ¶ 36, 718 N.W.2d 168 (citations omitted). A statute is not void for vagueness merely because its applicability may be uncertain in some situations. Id.
¶ 31 With regard to enforcement, the statute must "establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner." Hegwood , 676 F.3d at 603 (citation omitted). A statute is vague "if a trier of fact must apply its own standards of culpability rather than those set out in the statute." Nelson , 294 Wis.2d 578, ¶ 37, 718 N.W.2d 168 (citation omitted). A statute is not void for vagueness merely "because the boundaries of the prohibited conduct are somewhat hazy." State v. McCoy , 143 Wis.2d 274, 286, 421 N.W.2d 107 (1988) (citation omitted).
¶ 32 Culver contends the statute is vague because, as noted earlier, the terms "newsworthy" and "of public importance" are unclear. We disagree.
¶ 33 Culver's argument is conclusory. Stating that a term is unclear does not make it so. We are given no reason to believe that these terms are any less clear to apply than any other terms within the statute. Moreover, for a long time "newsworthiness" has been a concept used in defamation and privacy cases. An item is newsworthy if it is "a matter of legitimate public interest," such as "political happenings [and] social trends." See, e.g. , Bogie v. Rosenberg , 705 F.3d 603, 614 (7th Cir.2013) (interpreting Wisconsin law). This comports with the lay definition: "[S]ufficiently interesting *244 to a general public to warrant reporting in the news." Newsworthy , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). Similarly, the "public importance" concept is used within First Amendment jurisprudence. "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern *114 to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.' " Snyder , 562 U.S. at 453, 131 S.Ct. 1207 (citations omitted). Because Culver has not shown how these well-worn terms fail to adequately convey their meaning, we cannot conclude that they are vague here.
¶ 34 Culver argues the statute is vague by revisiting a prior argument. He contends the statute fails to explain what happens when a depicted person, who had initially given consent, later revokes consent, and this failure renders it vague. We are unpersuaded. It is clear that there is no violation when the publisher has consent at the time of the publishing. Whether the statute places an affirmative duty on a publisher to withdraw an image if consent is revoked is a case-specific question not before us, and the statute is not rendered vague simply because there may be some uncertainty about its application in a particular situation. See Nelson , 294 Wis.2d 578, ¶ 36, 718 N.W.2d 168.
¶ 35 Culver argues the statute fails to set the geographical "parameters of the offense that will subject a person to Wisconsin's criminal jurisdiction." The statute is vague, he contends, because it is unknown whether jurisdiction is determined by the citizenship or location of the depicted person, the place the image is disclosed, or the place it is viewed. We disagree.
*245 ¶ 36 Culver's argument is based on a false premise. It presumes that a criminal statute itself must identify what element or circumstance will invoke the territorial jurisdiction of a Wisconsin court. He cites no authority, and we find none, to support the presumption. WISCONSIN STAT. § 939.03 generally governs court jurisdiction for violations of state criminal statutes. That provision confers jurisdiction under various circumstances, to include whenever a "constituent element" of a crime "takes place" in Wisconsin.[16] Sec. 939.03(1)(a) ; see generally State v. Anderson , 2005 WI 54, ¶ 47, 280 Wis.2d 104, 695 N.W.2d 731 (for first-degree intentional homicide, a Wisconsin court has jurisdiction if the "intent to kill" (a constituent element) is manifested by some act of the defendant in Wisconsin). We will not find the "post or publish" statute vague for failing to spell out how territorial jurisdiction is conferred.[17]
*246 The Felon-in-Possession Ban
¶ 37 Culver argues that the felon-in-possession statute-which imposes a lifetime firearm ban on all felons-is unconstitutional as applied to him.[18] An "as applied" claim asserts that a statute is *115 unconstitutional under the particular facts or to the particular party of the pending case. State v. Smith , 2010 WI 16, ¶ 10 n.9, 323 Wis.2d 377, 780 N.W.2d 90. As noted previously, whether a statute is constitutional is an issue of law that we consider de novo. State v. Stenklyft , 2005 WI 71, ¶ 7, 281 Wis.2d 484, 697 N.W.2d 769. The challenger bears the burden to prove the statute is unconstitutional as applied beyond a reasonable doubt. Smith , 323 Wis.2d 377, ¶ 11, 780 N.W.2d 90. The statute must survive this court's "intermediate scrutiny," under which "a law 'is valid only if substantially related to an important governmental objective.' " State v. Pocian , 2012 WI App 58, ¶ 11, 341 Wis.2d 380, 814 N.W.2d 894.
¶ 38 The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Similarly, article I, section 25 of the Wisconsin Constitution states "[t]he people have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose."
*247 ¶ 39 The Second Amendment confers an "individual right to keep and bear arms" as opposed to conferring only a collective right limited to militia members. District of Columbia v. Heller , 554 U.S. 570, 598, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). This right applies to the states. McDonald v. City of Chicago , 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (plurality opinion).
¶ 40 But Heller and McDonald acknowledged that, like First Amendment and other rights, Second Amendment protection is not unlimited. Heller , 554 U.S. at 626, 128 S.Ct. 2783 ; McDonald , 561 U.S. at 786, 130 S.Ct. 3020. Heller noted that, "although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." Heller , 554 U.S. at 626, 128 S.Ct. 2783. "We identify these presumptively lawful regulatory measures [applying to felons and the mentally ill] only as examples; our list does not purport to be exhaustive." Id. at 626-27 n.26, 128 S.Ct. 2783.
¶ 41 Culver argues the felon-in-possession statute is constitutionally infirm because it does not distinguish violent felonies from nonviolent felonies (such as his OWI), nor "serious felonies" from "non-serious felonies."[19] To support his contention that the ban cannot be constitutionally applied to him, he refers to the following circumstances: he has no convictions for violent offenses; he has "residential stability" and a *248 "lengthy employment record"; his last OWI conviction is a Class H felony, which is the second to lowest felony classification; when his firearms were recovered, they were in his residence as opposed to on his person in a concealed manner or while he was traveling in his car; and the record is devoid of any allegation that he used firearms while intoxicated or in a violent manner. We reject his challenge.[20] *116 ¶ 42 Culver's argument has already been settled, and he fails to distinguish his case from the binding precedent. We have twice upheld the felon-in-possession statute against constitutional challenges. See Pocian , 341 Wis.2d 380, ¶¶ 12, 15, 814 N.W.2d 894 ; State v. Thomas , 2004 WI App 115, ¶ 23, 274 Wis.2d 513, 683 N.W.2d 497.
¶ 43 In Thomas , the defendant contended the firearm ban was irrational, as it failed to distinguish violent from nonviolent felons, thereby violating the Equal Protection Clause. Thomas , 274 Wis.2d 513, ¶¶ 30-31, 683 N.W.2d 497. The Thomas court discussed and adopted the reasoning of three non-Wisconsin cases, including State v. Brown , 571 A.2d 816 (Me. 1990), which applied *249 Maine's felon-in-possession statute to a man "convicted of operating a vehicle after revocation of the license of a habitual motor vehicle offender." Thomas , 274 Wis.2d 513, ¶ 34, 683 N.W.2d 497 (citation omitted). The Brown court reasoned: "One who has committed any felony has displayed a degree of lawlessness that makes it entirely reasonable for the legislature, concerned for the safety of the public it represents, to want to keep firearms out of the hands of such a person." Brown , 571 A.2d at 821. "Labeling his preexisting felony status the product of a 'nonviolent' crime obscures its seriousness as well as the very real threat to public safety created by his continued misconduct, a threat that might well be aggravated by the availability of a firearm." Id. The Brown court concluded the "legislative determination that [the defendant] is an undesirable person to possess a firearm is entirely reasonable and consonant with the legitimate exercise of police power for public safety." Id. ; see also Thomas , 274 Wis.2d 513, ¶ 35, 683 N.W.2d 497.
¶ 44 In Pocian , we considered an overbreadth challenge to the statutory firearm ban in light of Heller and McDonald . We rejected the challenge, noting that "[n]o state law banning felons from possessing guns has ever been struck down," that "no federal ban on felons possessing guns has been struck down in the wake of Heller ," and that a legislature may constitutionally and "categorically ban felons from possessing guns." Pocian , 341 Wis.2d 380, ¶ 12, 814 N.W.2d 894. Any change in the law should be "through the legislature." Id.
¶ 45 In addition to the overbreadth argument, the defendant in Pocian also advanced the equal protection argument made in Thomas , i.e., the statute fails to distinguish violent from nonviolent felons. We saw no constitutional violation. "The governmental objective of public safety is an important one, and we *250 hold that the legislature's decision to deprive [the defendant] of his right to possess a firearm is substantially related to this goal." Pocian , 341 Wis.2d 380, ¶ 15, 814 N.W.2d 894. We explained the right to bear arms was based on "the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.' " Id. (citation omitted). Violent or not, felons can be constitutionally deprived of the right to bear arms. See id.
¶ 46 Despite the distinctions made by Culver, Pocian controls. We plainly concluded that the ban on both violent and nonviolent felons is constitutional, Pocian , 341 Wis.2d 380, ¶ 12, 814 N.W.2d 894, and we plainly must follow that holding: "[T]he *117 court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals." Cook v. Cook , 208 Wis.2d 166, 190, 560 N.W.2d 246 (1997).
¶ 47 Culver notes the Pocian court's observation that, although the defendant "did not utilize physical violence in the commission of his three [forgery] felonies, he did physically take his victim's property." Pocian , 341 Wis.2d 380, ¶ 15, 814 N.W.2d 894. Culver points out that there is no allegation that he has ever "physically taken" another's property. While that may be true, Culver has committed crimes that could have caused death, bodily injury, or property damage. The crime in Pocian -forgery-is both nonviolent and nondangerous. Culver's crime-OWI-may be nonviolent, but it is plainly dangerous. The felony of OWI does not serve as a basis to distinguish Pocian .
¶ 48 Culver also distinguishes Pocian by noting that the defendant in that case used his gun to hunt deer, whereas Culver was simply storing his firearms.
*251 We do not see the relevance of the distinction. The statute prohibits "possess[ion]" of firearms; actual use is not material. WIS. STAT. § 941.29(2). Had the defendants not been felons, use of the gun in Pocian and storage of the guns here would have been lawful activities.
By the Court. -Judgment and order affirmed.

The facts are taken largely from the criminal complaint and are not disputed.

All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted. After Culver's offenses occurred, the legislature amended the "post or publish" statute. See, e.g. , 2015 Wis. Act 292, 320, 370.

The repeater enhancer on each count was struck because a prior felony motor vehicle offense cannot be used as a basis for the enhancer and the other two counts were dismissed on the prosecutor's motion.

In December 2015, Culver moved to withdraw his guilty plea, which was denied. As part of his July 2016 motion, Culver requested sentence modification, which was also denied. Those issues are not on appeal.

The Attorney General's Office declined to participate in postconviction proceedings.

We deal exclusively with subd. 2. of Wis. Stat. § 942.09(3m)(a), which is the provision under which Culver was charged and is the only provision addressed by the parties.

The parties agree that the subject matter of the statute is content-based, viewpoint-neutral, speech subject to First Amendment analysis.

Both parties discuss application of the substantiality standard as well as the strict scrutiny standard, the latter of which requires the State to prove the statute is narrowly drawn to achieve a compelling state interest. See State v. Baron , 2009 WI 58, ¶¶ 43-44, 318 Wis.2d 60, 769 N.W.2d 34. Because we conclude the statute does not prohibit protected speech in a substantial number of its applications, we do not need to determine whether it passes strict scrutiny. See State v. Hemmingway , 2012 WI App 133, ¶ 12, 345 Wis.2d 297, 825 N.W.2d 303 ("[O]nly if the statute substantially prohibits protected speech [do] we analyze the statute's sweep under strict or intermediate scrutiny."); see also Thayer v. City of Worcester , 755 F.3d 60, 71 (1st Cir.2014), certiorari granted and judgment vacated on other grounds , --- U.S. ----, 135 S.Ct. 2887, 192 L.Ed.2d 924 (2015) (former United States Supreme Court Justice Souter explaining that, in an overbreadth challenge, "the claimant has the initial burden to make" a showing of " 'substantial' overbreadth before any burden of justification, be it strict or intermediate, passes to the government").

Although the statute applies to both posting and publishing, for ease of reading, this opinion at times will simply refer to publishing.

"Nude or partially nude person" and "[s]exually explicit conduct" are defined in Wis. Stat. §§ 942.08(1)(a) and 948.01(7), respectively. See Wis. Stat. § 942.09(1)(am) & (d).

Because the legislature has since amended the "post or publish" statute, which now, for example, includes a definition of "consent," see Wis. Stat. § 942.09(1)(ae) (2015-16), we offered the parties an opportunity to comment on the changes. Both parties agree that the changes do not affect this case.

We are unpersuaded with Culver's citation to Baron , 318 Wis.2d 60, ¶ 49, 769 N.W.2d 34. Culver suggests that Baron determined that the identity theft statute is constitutional on account of its inclusion of an intent to harm. Although the Baron court pointed out that intent to harm was an element of the statute, the court focused on the fact that the statute is limited to a person who first steals another's identity and uses that identity with an intent to harm. Id. Baron certainly does not stand for the proposition that a criminal statute must contain a wrongful intent element in order to survive an overbreadth challenge.

As the State aptly explains, this is another reason to distinguish the intent to harm under the stalking statute discussed in Hemmingway . Absent a speaker's intent to cause serious emotional distress or fear of bodily injury, texts, e-mails, etc., could be construed to be, rather than stalking, benign forms of communication.

Culver asserts the statute is overbroad because it does not limit where the image is captured. He offers the example of a revealing photo taken with consent out in the open and in public and later posted online. According to Culver, the poster may be criminally charged despite the fact that the depicted person was in the open and plainly visible to anyone nearby. Arguably this scenario would be circumscribed by the required showings of intent and consent to capture the photo, as well as knowledge and consent to publish. Beyond that, we are uncertain as to why specifying the location of a captured image matters or would be necessary to avoid overbreadth, and Culver fails to tell us. See State v. Pettit , 171 Wis.2d 627, 641-42, 492 N.W.2d 633 (Ct. App. 1992) (we do not address undeveloped arguments).

Culver expresses concern that the statute does not define "depiction" and that "depiction" could potentially apply to a sketch or drawing of a person. A statute need not (in fact could not) provide a definition for every term used. Culver does not explain how the term "depiction" makes the statute overbroad nor why the inclusion of a sketch is more problematic than a photograph, when the intent, knowledge, and consent restrictions applicable to the depicted person are the same. We will not address undeveloped arguments. See Pettit , 171 Wis.2d at 641-42, 492 N.W.2d 633.

For example, a constituent element of the "post or publish" statute is the act of posting or publishing the private representation (or causing another to do so). If that posting or publishing-the disclosure of the restricted image-occurs in Wisconsin, a Wisconsin court will have jurisdiction over the offense.

Culver has also challenged the constitutionality of the "post or publish" statute on the ground that it violates the Commerce Clause. Repeating his complaint that the statute does not identify whether jurisdiction depends on a particular location or citizenship, he contends interstate commerce is thereby unjustifiably burdened and conduct outside of Wisconsin's borders is improperly regulated. We reject the argument because Culver has no standing to make it. Culver does not allege that he was an out-of-state actor, was engaged in interstate commerce, or sustained an injury in fact in this regard. See Cibolo Waste, Inc. v. City of San Antonio , 718 F.3d 469 (5th Cir.2013). He cites no authority that dispenses with the standing requirement for a constitutional challenge under the Commerce Clause.

Wisconsin Stat. § 941.29(2)(a) stated in part that "[a] person ... is guilty of a Class G felony if he or she possesses a firearm" subsequent to a felony conviction. This portion of the statute was since modified and is now found in § 941.29(1m) (2015-16).

Culver contrasts the "serious felony" of first-degree intentional homicide with the "non-serious felonies" of twice interrupting a funeral procession and negligent handling of fireworks causing injury. See Wis. Stat. §§ 940.01, 947.011, & 940.24(1).

The State asserts Culver forfeited this argument when he pled guilty. Under the guilty plea waiver rule, a plea waives all nonjurisdictional objections, even constitutional ones. State v. Kelty , 2006 WI 101, ¶ 18, 294 Wis.2d 62, 716 N.W.2d 886. The rule is one of administration, not power, and we can choose not to apply it, such as when an issue is of state-wide importance. State v. Tarrant , 2009 WI App 121, ¶ 6, 321 Wis.2d 69, 772 N.W.2d 750. Culver asserts the issue, being of constitutional dimension, is important and that, alternatively, if we do not address it, we should remand the case for a hearing on whether his trial counsel provided ineffective assistance. We need not address the waiver rule, as we choose to address the constitutional issue. Given our decision, there is no reason for a remand on an ineffective assistance of counsel claim.