IN the INTEREST OF ROBERT T.,
a person under the age of 17:

STATE of Wisconsin, Petitioner-Appellant,

v.

ROBERT T., Respondent-Respondent.

Court of Appeals

*No. 2006AP2206. Oral argument November 28, 2007.
—Decided January 15, 2008.*

2008 WI App 22

(Also reported in 746 N.W.2d 564.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *E. Michael McCann*, district attorney, *John M. Stoiber*, assistant district attorney, and *John T. Chisholm*, district attorney, with oral argument by John M. Stoiber.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Bradley J. Bloch* of Waukesha, with oral argument by Bradley J. Bloch.

Before Curley, P.J., Wedemeyer and Kessler, JJ.

¶ 1. CURLEY, P.J. The State appeals the trial court's order dismissing the delinquency petition brought against Robert T. for violating Wis. Stat. § 947.015 (2003–04),[1] entitled "Bomb scares," after the trial court ruled that the statute was unconstitutional. Because Robert T.'s telephone call was a "true threat" and falls outside the protections found in the First Amendment of the United States Constitution, and art. I, § 3 of the Wisconsin Constitution, the statute Robert T. was charged with violating is not unconstitutional. As a result, we reverse and remand to the trial court and direct that the delinquency petition be reinstated.

## I. BACKGROUND.

¶ 2.   According to the police reports and the delinquency petition found in the record, on February 23, 2006, a 911 call was placed from a pay phone at Washington High School to the police. The caller said that there was a bomb in the school. Police were sent to the school. A surveillance camera revealed the caller, who was later identified as Robert T. Robert T. admitted making the call, saying that he did it because "[h]e was bored and was looking for something to do." Robert T.'s attorney filed a motion seeking dismissal on several grounds, including his claim that Wis. Stat. § 947.015 was "overbroad in violation of the Due Process Clause of the 14th Amendment and in violation of the First Amendment of the United States Constitution and Article 1, Section 3 of the Wisconsin Constitution." On July 12, 2006, the trial court held a hearing on the

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

491

motion. At the conclusion, the trial court found that the statute was "impermissibly overbroad," rendering the statute unconstitutional. Later, the trial court signed an order dismissing the action. The State's appeal follows.

## II. ANALYSIS.

¶ 3.   The State submits that the trial court erred in determining that the statute was unconstitutional because it was "impermissibly overbroad." The State argues that the speech the statute proscribes is limited to that which constitutes "true threats," which do not enjoy United States or Wisconsin constitutional protection.

¶ 4.   Robert T. urges us to affirm the trial court. He contends that the conduct being outlawed by the statute reaches protected free speech and that the Supreme Court's decision in *Virginia v. Black*, 538 U.S. 343 (2003), narrowed the concept of "true threats" to those which "communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *See id.* at 359. Thus, Robert T. submits that to be a "true threat," the threat must be addressed to a person or persons and must threaten bodily harm or death. Robert T. extrapolates from the holding in Virginia that the definition of a "true threat" cannot include a threat of destroying property by means of explosives. We disagree.

¶ 5.   "The constitutionality of a statute presents a question of law that we review de novo." *State v. Schaefer*, 2003 WI App 164, ¶ 30, 266 Wis. 2d 719, 668 N.W.2d 760. Generally, statutes "enjoy a presumption of constitutionality that the challenger must refute[, but

w]hen a statute infringes on First Amendment rights, . . . the State bears the burden of proving the statute constitutional beyond a reasonable doubt." *State v. Trochinski*, 2002 WI 56, ¶ 33, 253 Wis. 2d 38, 644 N.W.2d 891 (citation and internal quotation marks omitted).

¶ 6. The First Amendment of the United States Constitution, applicable to the states under the Due Process Clause of the Fourteenth Amendment, provides in pertinent part that "Congress shall make no law . . . abridging the freedom of speech." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996). Article I, § 3 of the Wisconsin Constitution provides in pertinent part that "[e]very person may freely speak, write and publish his [or her] sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press." Despite the differences in language between these provisions, we have found no differences in the freedoms that they guarantee. *County of Kenosha v. C & S Mgmt., Inc.*, 223 Wis. 2d 373, 388, 588 N.W.2d 236 (1999).

¶ 7. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002). A person whose conduct is clearly unprotected is still allowed to attack the facial validity of a statute because of the chilling effect an overly broad statute may have on protected speech. *New York v. Ferber*, 458 U.S. 747, 768–69 (1982). However, finding a statute invalid because of overbreadth should not be done lightly.

> Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, [the Supreme Court has] recognized that the overbreadth doctrine is "strong medicine" and [has] employed it with hesitation, and then "only as a last resort."

*Id.* at 769 (citation omitted). As such, the Supreme Court "insist[s] that the overbreadth involved be 'substantial' before the statute involved will be invalidated on its face." *Id.* Accordingly, courts must apply a limiting construction to a statute, if available, that will eliminate the statute's overreach, while still "maintain[ing] the legislation's constitutional integrity." *State v. Thiel*, 183 Wis. 2d 505, 521, 515 N.W.2d 847 (1994); *see Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Alternatively, a court may sever that portion of the statute which leads to overbreadth, leaving the statute as modified in full effect. *See Thiel*, 183 Wis. 2d at 522.

¶ 8. The statute in question, WIS. STAT. § 947.015, reads: "Whoever intentionally conveys or causes to be conveyed any threat or false information, knowing such to be false, concerning an attempt or alleged attempt being made or to be made to destroy any property by the means of explosives is guilty of a Class I felony."

■
¶ 9. Clearly, telephone calls are a mode of speech that ordinarily falls within the protection of the First Amendment of the United States Constitution and art. I, § 3 of the Wisconsin Constitution. However, "it is well understood that the right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942). Some categories of speech are "likely to produce a clear and present danger of a serious substantive evil that rises

far above public inconvenience, annoyance, or unrest." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). These categories include "true threats." *See Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam).

¶ 10.   "By contrast [to mere threats], 'true threat' is a constitutional term of art used to describe a specific category of unprotected speech." *State v. Douglas D.*, 2001 WI 47, ¶ 31, 243 Wis. 2d 204, 626 N.W.2d 725 (citing *Watts*, 394 U.S. at 707–08; *State v. Perkins*, 2001 WI 46, ¶ 17, 243 Wis. 2d 141, 626 N.W.2d 762). "This category, although often inclusive of speech or acts that fall within the broader definition of 'threat,' does not include protected speech." *Id.* (citing *United States v. Miller*, 115 F.3d 361, 363 (6th Cir. 1997); *Perkins*, 243 Wis. 2d 141, ¶ 17). "Therefore, states may, consistent with the First Amendment, prohibit all 'true threats.' " *Id.*

¶ 11.   The question of what constitutes a "true threat" was answered in *Perkins*:

> This court . . . concludes that the test for a true threat that appropriately balances free speech and the need to proscribe unprotected speech is an objective standard from the perspectives of both the speaker and listener. A true threat is determined using an objective reasonable person standard. A true threat is a statement that a speaker would reasonably foresee that a listener would reasonably interpret as a serious expression of a purpose to inflict harm, as distinguished from hyperbole, jest, innocuous talk, expressions of political views, or other similarly protected speech. It is not necessary that the speaker have the ability to carry out the threat. In determining whether a statement is a true threat, the totality of the circumstances must be considered.

*Id.*, 243 Wis. 2d 141, ¶ 29 (footnotes omitted).

495

¶ 12. Robert T. argues that the statute suffers from overbreadth because it prohibits speech that could be protected. We disagree. Prior Wisconsin opinions have held that only "true threats" are punishable, and consequently, WIS. STAT. § 947.015 must be read with the limitation that only a false bomb scare that constitutes a "true threat" can be charged.

¶ 13. *Perkins* concerned a man charged with threatening to kill a judge. *Id.*, 243 Wis. 2d 141, ¶ 9. The supreme court observed that "some threatening words are protected speech under the First Amendment. Only a 'true threat' is constitutionally punishable under statutes criminalizing threats." *Id.*, ¶ 17. Thus, the holding in the case determined that any statute criminalizing speech has to be read with the understanding that it prohibits only speech that constitutes a "true threat." *Id.*

¶ 14. Another Wisconsin case, *Douglas D.*, tackled the thorny question of whether a juvenile was guilty of disorderly conduct when the juvenile, after recently being punished by his teacher, wrote a story in his creative writing assignment taught by the same teacher, the story line of which had the teacher's head being chopped off by a student. *Id.*, 243 Wis. 2d 204, ¶¶ 4-6, 14. There, the court reiterated its stance concerning "true threats" by noting that "for purposes of First Amendment analysis, a 'threat' is very different from a 'true threat.' . . . By contrast, 'true threat' is a constitutional term of art used to describe a specific category of unprotected speech." *Id.*, ¶ 31. Ultimately, the court determined that the story did not constitute a "true threat," and thus, it was protected by the First Amendment. *Id.*, ¶ 39. Applying the logic of these cases, we are satisfied that, upon reading into the

elements of the crime a requirement that it must be a "true threat," renders WIS. STAT. § 947.015 constitutional.

¶ 15. Indeed, this is exactly what the supreme court of the state of Washington did with a similar statute prohibiting threats. In *State v. Johnston*, 127 P.3d 707, 708–09 (Wash. 2006), an intoxicated man, Tracey Johnston, made various threats following his arrest at the airport. He was charged with making threats to bomb or injure property, contrary to the Washington statutes. *Id.* at 709. At his jury trial, the trial court refused to give an instruction offered by Johnston defining a "true threat." *Id.* In reversing the conviction, the supreme court explained:

> Here, the statute reaches a substantial amount of protected speech. For example, threats made in jest, or that constitute political statements or advocacy, would be proscribed unless the statute is limited to true threats. Accordingly, the statute must be limited to apply to only true threats.

*Id.* at 711–12.

¶ 16. WISCONSIN STAT. § 947.015 must be read with the requirement that only "true threats" can be prosecuted. Here, the police who responded to Robert T.'s phone call believed the threat was real. Also, Robert T. apparently intended to frighten the listener; thus, his call appears to fall within the ambit of a "true threat." Therefore, the statute is constitutional.

¶ 17. We next address Robert T.'s contention that the United States Supreme Court, in its *Virginia* decision, narrowed the focus of what constitutes a real threat to those threats that threaten "bodily harm or death" to a person or a group of persons. We disagree.

¶ 18. The *Virginia* case dealt with a statute that prohibited cross burnings. It reads:

> It shall be unlawful for any person or persons, with the intent of intimidating any person or group of persons, to burn, or cause to be burned, a cross on the property of another, a highway or other public place. Any person who shall violate any provision of this section shall be guilty of a Class 6 felony.
>
> Any such burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons.

*Id.*, 538 U.S. at 348. Black, who was convicted of violating the statute, objected on First Amendment grounds that cross-burning itself was sufficient evidence from which the required "intent to intimidate" could by inferred. *Id.* at 349–50. In finding that the statute was overbroad, *id.* at 364–65, the Supreme Court commented on the application of the "true threat" doctrine as it applied to the statute, *id.* at 359–60. The court opined:

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. *See Watts*[, 394 U.S.] at 708 ("political hyperbole" is not a true threat); *R.A.V. v. City of St. Paul*, 505 U.S. [377, 388 (1992)]. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." *Ibid.* Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to

498

a person or group of persons with the intent of placing
the victim in fear of bodily harm or death.

*Virginia*, 538 U.S. at 359–60. We do not read this
passage as narrowing the definition of "true threats" to
threats directed only at a person or group of individu-
als, nor do we read the holding as requiring a threat to
be limited to "bodily harm or death." Rather, the court
was applying the "true threat" doctrine to the specific
facts and statutory language at issue; that is, whether
by burning a cross a person can be assumed to have
done so with the intent to intimidate a person or group
of persons.

¶ 19.    In addition, we note that Wisconsin law has
never limited a "true threat" to one which is directed at
a person or group of persons and threatens bodily harm
or death. Also, our research has been unable to find any
cases which have adopted Robert T.'s interpretation of
*Virginia*. Since *Virginia* was decided, numerous states
have dealt with related statutes criminalizing bomb
scare/threat and false alarms and numerous prosecu-
tions have taken place for threatening to blow up
property. *See, e.g., Johnston*, 127 P.3d 707; *State v.
Gibson*, No. 2007–G–2755, slip op., 2007 WL 4150950
(Ohio Ct. App. Nov. 21, 2007); *see also United States v.
Brahm*, 520 F. Supp. 2d 619, 621–22 (D.N.J. 2007)
(charging a Wisconsin resident for posting information
on a website that he knew to be false concerning acts
that would cause damage to buildings or vehicles, and
involving use of weapons of mass destruction and
radiological dispersion devices). Certainly if the Su-
preme Court meant to severely limit the definition of
"true threats" to apply only to threats of bodily harm or
death directed to a person or group of persons, these
other prosecutions would have been challenged. They

have not been, and we are satisfied that Robert T.'s interpretation is wrong. Consequently, the trial court erred in so finding. Thus, the trial court's order is reversed and remanded with directions that the trial court reinstate the delinquency petition.

*By the Court.*—Order reversed and cause remanded with directions.