# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:    2018AP2074-CR

† Petition for Review filed

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAMES L. JACKSON, JR.,

DEFENDANT-APPELLANT.†

| | |
|---|---|
| Opinion Filed: | December 26, 2019 |
| Submitted on Briefs: | October 10, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Gundrum, J. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:    On behalf of the defendant-appellant, the cause was submitted on the briefs of *Andrew R. Hinkel*, assistant state public defender of Madison.

Respondent
ATTORNEYS:    On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah L. Burgundy*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

# COURT OF APPEALS
# DECISION
# DATED AND FILED

### December 26, 2019

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2018AP2074-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2016CF162

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JAMES L. JACKSON, JR.,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Calumet County:  JEFFREY S. FROEHLICH, Judge.  *Affirmed.*

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶1     REILLY, P.J.  James L. Jackson, Jr., challenges a provision of the Wisconsin sex offender registry statute, WIS. STAT. § 301.45(2)(a)6m. (2017-18),[1] as violating the First Amendment.  This provision requires registrants to disclose to the Department of Corrections (DOC) e-mail addresses, Internet user names, Internet profiles, and websites created or maintained by the registrant.  The circuit court found no First Amendment violation.  We agree and affirm.

BACKGROUND

¶2     Jackson was convicted of second-degree sexual assault of a child in 1990 after he groomed and sexually assaulted his employer's fourteen-year-old daughter.  Jackson was required to comply with the sex offender registry requirements pursuant to WIS. STAT. § 301.45, which provides, in pertinent part, that an individual subject to the registry requirements must inform the DOC of

> [t]he name or number of every electronic mail account the person uses, the Internet address of every website the person creates or maintains, every Internet user name the person uses, and the name and Internet address of every public or private Internet profile the person creates, uses, or maintains.  The department may not place the information provided under this subdivision on any registry that the public may view but shall maintain the information in its records on the person.  This subdivision applies only to an account, website, Internet address, or Internet profile the person creates, uses, or maintains for his or her personal, family, or household use.[2]

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Going forward, we will refer to the required information as "Internet identifiers."

2

Sec. 301.45(2)(a)6m. If a registrant makes any changes to the above, he or she must notify the DOC within ten days of the change(s). Sec. 301.45(4). Failure to comply with these requirements constitutes a felony. Sec. 301.45(6)(a)1.

¶3 In 2016, police were informed that Jackson was using his housemate's computer "at all hours of the night … trying to talk to young girls in the area over the internet." An investigation revealed that Jackson had created a Facebook profile in November 2015 using the name "Lendord Jackson." Jackson had not informed the DOC of the Facebook profile or the e-mail address associated with it.

¶4 Jackson was charged with and pled no contest to one count of a sex offender registry violation as a repeater. Jackson filed a postconviction motion arguing that WIS. STAT. § 301.45(2)(a)6m. violates the First Amendment as applied to him and is facially overbroad. The circuit court found that Jackson waived his as-applied challenge and denied the facially overbroad challenge. Jackson appeals.

DISCUSSION

¶5 The First Amendment provides in pertinent part that "Congress shall make no law … abridging the freedom of speech." U.S. CONST. amend. I; *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996). We review the constitutionality of a statute de novo. *State v. Robert T.*, 2008 WI App 22, ¶5, 307 Wis. 2d 488, 746 N.W.2d 564.

¶6 Jackson argues that WIS. STAT. § 301.45(2)(a)6m. is unconstitutional as applied to him as it deprives him of his right to anonymous speech under the First Amendment and that it is facially overbroad as it "infringes on far more

speech than can be justified and chills protected speech." When evaluating a challenge to a sex offender registry statute under the First Amendment, we first question whether the Internet identifier reporting requirements implicate the First Amendment. *See, e.g.*, ***Doe v. Harris***, 772 F.3d 563, 572 (9th Cir. 2014). If they do, we then determine what level of scrutiny we need to apply. ***Id.*** at 574. Lastly, we determine whether the statute passes constitutional muster under that level of scrutiny. ***Id.*** at 576-78. Neither party disputes that the First Amendment is implicated.[3] We also agree with the parties that the level of scrutiny to be applied in this case is intermediate scrutiny.[4] "In order to survive intermediate scrutiny, a

---

[3] First Amendment rights include a right to anonymous speech that occurs on the Internet. *See* ***Packingham v. North Carolina***, 137 S. Ct. 1730, 1735 (2017) ("While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general and social media in particular." (citation omitted)); *see also* ***McIntyre v. Ohio Elections Comm'n***, 514 U.S. 334, 342 (1995) (explaining that the First Amendment right to freedom of speech also includes right to publish and distribute writings while remaining anonymous). The right of free speech, however, either on or off the Internet, is not absolute. *See* ***Grayned v. City of Rockford***, 408 U.S. 104, 115 (1972); ***People v. Minnis***, 2016 IL 119563, ¶23.

WISCONSIN STAT. § 301.45(2)(a)6m. does not on its face prohibit speech, as it only requires registrants to report his or her Internet identifiers. Nevertheless, it does burden constitutionally protected speech as it calls into question a registrant's willingness or ability to speak anonymously on the Internet. *See, e.g.*, ***Laird v. Tatum***, 408 U.S. 1, 11 (1972) ("[C]onstitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights."); ***Doe v. Harris***, 772 F.3d 563, 572-74 (9th Cir. 2014); *see also* ***United States v. Playboy Entm't Grp.***, 529 U.S. 803, 812 (2000) ("The distinction between laws burdening and laws banning speech is but a matter of degree.").

[4] Nearly every court to consider a challenge to a sex offender registry Internet provision has concluded that content-neutral restrictions on sex offender registrants' use of the Internet is subject to intermediate level scrutiny. *See e.g.*, ***Ex parte Odom***, 570 S.W.3d 900, 910 & n.1 (Tex. Crim. App. 2018); *see also* ***Packingham***, 137 S. Ct. at 1736.

(continued)

4

law must be 'narrowly tailored to serve a significant governmental interest.' In other words, the law must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" ***Packingham v. North Carolina***, 137 S. Ct. 1730, 1736 (2017) (citations omitted). We, therefore, address solely whether § 301.45(2)(a)6m. passes constitutional muster under intermediate scrutiny by examining Jackson's as-applied and facial challenges.

### *As-Applied Challenge*

¶7    Jackson argues that WIS. STAT. § 301.45(2)(a)6m. violates his First Amendment rights as applied to him because the statute infringes on his right to communicate anonymously on the Internet. The State argues, and the circuit court agreed, that Jackson waived his as-applied challenge by virtue of his no contest plea.

¶8    Whether Jackson waived his right to appeal the constitutionality of the statute as applied to him based on his no contest plea is a question of law we review de novo. ***State v. Kelty***, 2006 WI 101, ¶13, 294 Wis. 2d 62, 716 N.W.2d 886. In Wisconsin, we employ the guilty plea waiver rule, which states that a guilty, no contest, or Alford plea "waives all nonjurisdictional defects, including constitutional claims." ***State v. Multaler***, 2002 WI 35, ¶54, 252 Wis. 2d 54, 643

---

In the First Amendment context, the most important question when determining the level of scrutiny to apply is whether the statute is content-based or content-neutral. ***Ward v. Rock Against Racism***, 491 U.S. 781, 791 (1989). "Content-based regulations are presumptively invalid" and subject to rigorous scrutiny. ***R.A.V. v. City of St. Paul***, 505 U.S. 377, 382 (1992). In contrast, a statute governing expressive activity is content-neutral where it is "*justified* without reference to the content of the regulated speech." ***Ward***, 491 U.S. at 791 (citation omitted). Here, the statute does not address or reference the content of the speech or activity; instead, it applies the requirements of the statute equally across the board, making intermediate scrutiny appropriate.

5

N.W.2d 437. An exception to the guilty plea waiver rule states that "a 'facial' constitutional challenge [is] a matter of subject matter jurisdiction," which cannot be waived, whereas an as-applied challenge is a nonjurisdictional defect that can be waived. *State v. Cole*, 2003 WI 112, ¶46, 264 Wis. 2d 520, 665 N.W.2d 328; *see also* ***State v. Trochinski***, 2002 WI 56, ¶34 n.15, 253 Wis. 2d 38, 644 N.W.2d 891.

¶9    Jackson counters that under ***Class v. United States***, 138 S. Ct. 798 (2018), Wisconsin's guilty plea waiver rule does not apply to his as-applied challenge. We disagree as it is not clear in ***Class*** whether Class' challenge was an as-applied or a facial challenge. A facial challenge "strip[s] the government of its ability to obtain a conviction against any defendant," whereas "an as-applied challenge does not dispute the court's power to hear cases under the statute; rather, it questions the court's limited ability to enter a conviction in the case before it." ***United States v. Phillips***, 645 F.3d 859, 863 (7th Cir. 2011) (citing ***Blackledge v. Perry***, 417 U.S. 21, 30 (1974)). Wisconsin has previously recognized that distinction in our decisions on the guilty plea waiver rule, *see, e.g.*, ***Cole***, 264 Wis. 2d 520, ¶46, and we find that ***Class*** does not preclude application of the guilty plea waiver rule as it pertains to Jackson's as-applied constitutional challenge.

¶10    Jackson also asks us under ***State v. Tarrant***, 2009 WI App 121, ¶6, 321 Wis. 2d 69, 772 N.W.2d 750, to not apply the guilty plea waiver rule as the rule is one of administration. Jackson argues that his issue is one of statewide importance, the statute is contrary to the interests of justice, and all pertinent facts are clear from the complaint. *See* ***id.*** We decline review under ***Tarrant*** as Jackson does not provide any developed argument with supporting facts as to why the statute is unconstitutional specifically as applied to him.

¶11 We conclude that Jackson's as-applied challenge was waived by his plea of no contest.

*Facial/Overbroad Challenge*

¶12 Jackson challenges WIS. STAT. § 301.45(2)(a)6m. as being unconstitutional on its face as it "infringes on far more speech than can be justified and chills protected speech, and is thus unconstitutionally overbroad."[5] Jackson's only challenge is overbreadth. Jackson argues that subd. 6m. is "unconstitutionally overbroad because it requires a registrant to turn over to the government a wide array of information not remotely related to any threat to the public" and "makes it a criminal offense for the registrant to blog, or run any other website, anonymously." The purpose behind an overbreadth challenge is "concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). "A statute is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate." *State ex rel. Two Unnamed Petitioners v. Peterson*, 2015 WI 85, ¶52, 363 Wis. 2d 1, 866 N.W.2d 165 (citation omitted).

---

[5] Challenges to a statute's constitutionality generally must be presented by an individual with "a personal and vested interest in the outcome of the litigation, demonstrating the statute's unconstitutional application to their individual conduct." *State v. Oatman*, 2015 WI App 76, ¶6, 365 Wis. 2d 242, 871 N.W.2d 513 (citation omitted). First Amendment challenges are exempt from this requirement, however, "due to the gravity of a 'chilling effect' that may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* (citations omitted). This exception is known as the overbreadth doctrine. *Id.*, ¶7.

¶13 Unlike a traditional First Amendment challenge where the State bears the burden of proving the statute constitutional beyond a reasonable doubt, *see Trochinski*, 253 Wis. 2d 38, ¶33, "[t]he overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists," *Hicks*, 539 U.S. at 122 (second alteration in original; citation omitted). Within a facial overbreadth challenge, the claimant must show "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *State v. Culver*, 2018 WI App 55, ¶9, 384 Wis. 2d 222, 918 N.W.2d 103 (alteration in original; citation omitted); *State v. Oatman*, 2015 WI App 76, ¶8, 365 Wis. 2d 242, 871 N.W.2d 513. We are to be careful to "only sparingly utilize the overbreadth doctrine as a tool for statutory invalidation, proceeding with caution and restraint," *Oatman,* 365 Wis. 2d 242, ¶8 (citation omitted), as invalidating a statute is "strong medicine" to be "employed … with hesitation, and then 'only as a last resort,'" *New York v. Ferber*, 458 U.S. 747, 769 (1982) (citation omitted).

¶14 The first task in our constitutional analysis is to construe the challenged statute. *See United States v. Williams*, 553 U.S. 285, 293 (2008). WISCONSIN STAT. § 301.45(2)(a)6m. requires registrants to provide "[t]he name or number of every electronic mail account the person uses," meaning every e-mail address; "the Internet address of every website the person creates or maintains," which would include sites like a blog or an informational website; "every Internet user name the person uses, and the name and Internet address of every public or private Internet profile the person creates, uses, or maintains," which would presumably encompass a wide range of Internet behavior including creating profiles on social media sites like Facebook or Instagram, commercial sites like Amazon.com, or user names on other websites or blogs where the

individual might comment on or read content. *See id.* The statute creates a presumption that Internet identifiers will not be public knowledge as it provides that this information will not be included on the registry website for public view. *Id.* Further, the "subdivision applies only to an account, website, Internet address, or Internet profile the person creates, uses, or maintains for his or her personal, family, or household use." *Id.*

¶15 A registrant "shall notify the department once each calendar year, as directed by the department, of his or her current information specified in [WIS. STAT. § 301.45(2)(a)]," and within ten days "whenever any of the information under [§ 301.45(2)(a)] changes." Sec. 301.45(3)(b), (4)(a).

¶16 WISCONSIN STAT. § 301.46 addresses who has access to information required by WIS. STAT. § 301.45(2)(a)6m. The DOC is to make the information available to the police chief of any community and the sheriff of any county where the registrant is residing, employed, or attending school or provide the information to the police chief or sheriff when requested. Sec. 301.46(2)(a), (c), (d). The police chief or sheriff may

> provide any of the information to which he or she has access under this subsection to an entity in the police chief's community or the sheriff's county that is entitled to request information under sub. (4), to any person requesting information under sub. (5) or to members of the general public if, in the opinion of the police chief or sheriff, providing that information is necessary to protect the public.[6]

---

[6] The entities under subsec. (4) of WIS. STAT. § 301.46 include, among others, schools, child care providers and welfare agencies, group and foster homes, and the state's department of justice.

9

Sec. 301.46(2)(e); *see also* § 301.46(5)(b)4. Internet identifiers will not appear on the sex offender registry website for public view.

¶17 Having construed the statute, we next address whether it survives intermediate scrutiny: is WIS. STAT. § 301.45(2)(a)6m. narrowly tailored to a significant government interest? To do so, we need to judge the overbreadth of the statute "in relation to the statute's plainly legitimate sweep." *Culver*, 384 Wis. 2d 222, ¶9 (citation omitted).

¶18 It is without dispute that the government has a significant interest in protecting the public from sex offenders and assisting law enforcement in "protecting the public—particularly children" from those offenders. *State v. Smith*, 2010 WI 16, ¶27, 323 Wis. 2d 377, 780 N.W.2d 90; *see also Packingham*, 137 S. Ct. at 1736. As our supreme court has explained, "Wisconsin's sex offender registration statute 'reflect[s] an intent to protect the public and assist law enforcement and [is] related to community protection.'" *Smith*, 323 Wis. 2d 377, ¶26 (legitimate governmental interest) (alterations in original; citation omitted); *see also Ferber*, 458 U.S. at 756-57.

¶19 As WIS. STAT. § 301.45(2)(a)6m. is related to a significant governmental interest, we next determine whether it is narrowly tailored to that significant governmental interest. Clearly, "[t]he State's interest in protecting children from recidivist sex offenders … applies to internet use." *Packingham*, 137 S. Ct. at 1739 (Alito, J., concurring). As Justice Alito explained in his concurrence in *Packingham*:

> [C]hildren often use the internet in a way that gives offenders easy access to their personal information—by, for example, communicating with strangers and allowing sites to disclose their location. Second, the internet provides previously unavailable ways of communicating with, stalking, and ultimately abusing children. An abuser can

> create a false profile that misrepresents the abuser's age and gender. The abuser can lure the minor into engaging in sexual conversations, sending explicit photos, or even meeting in person. And an abuser can use a child's location posts on the internet to determine the pattern of the child's day-to-day activities—and even the child's location at a given moment. Such uses of the internet are already well documented, both in research and in reported decisions.

*Id.* at 1739-40 (Alito, J., concurring) (footnotes omitted). By requiring registrants to provide their Internet identifiers, law enforcement has an important tool at their disposal to protect the public from recidivist sex offenders. As the State explained,

> if police receive a complaint that a child has been receiving inappropriate communications from a particular e-mail address or internet account, law enforcement can request information from DOC regarding the e-mails or user names it has in its registry records. Or if police receive credible reports that a particular sex offender is using the internet to solicit children or engage in other illegal activity, law enforcement has internet identifiers available to assist in promptly conducting a public search or obtaining a search warrant.

¶20 Jackson argues that two provisions of WIS. STAT. § 301.45(2)(a)6m. are not narrowly tailored: (1) the provision requiring the individual to notify the DOC of "the Internet address of every website the person creates or maintains" and (2) the provision requiring the individual to provide "every Internet user name the person uses, and the name and Internet address of every public or private Internet profile the person creates, uses, or maintains." Jackson argues that these provisions require registrants to provide information that poses "no conceivable threat to the public." We disagree.

¶21 Jackson points to *Doe v. Nebraska*, 898 F. Supp. 2d 1086 (D. Neb. 2012), arguing that an Internet site maintained by a sex offender, like a blog, "poses no conceivable threat to the public." In *Nebraska*, the United States

11

District Court for the District of Nebraska considered statutes that required sex offenders to register electronic communication "identifiers, addresses, domain names, and Internet and blog sites used." ***Id.*** at 1093. The court determined that the statutes were "insufficiently narrow" as it "clearly chills offenders from engaging in expressive activity that is otherwise perfectly proper," and, more importantly, the statutory requirement to disclose Internet identifiers was intertwined with a requirement that registrants consent to a search of their computers and allow law enforcement to install "hardware or software to monitor the person's Internet usage on all the computers or electronic communication devices possessed by the person," thereby forcing the offender to choose between his or her First Amendment rights and his or her Fourth Amendment rights. ***Id.*** at 1094, 1120. The Nebraska statute also required "the offender to inform the State about 'all blogs and Internet sites maintained by the person or to which the person has uploaded any content or posted any messages or information.'" ***Id.*** at 1120 (emphasis omitted). The court took issue with that requirement specifically, noting that "requiring Internet identifiers and addresses, including designations for purposes of routing or self-identification, as permitted by the federal Attorney General's Guidelines, is one thing. Requiring sex offenders to constantly update the government about when and where they post content to Internet sites and blogs is an entirely different thing." ***Id.*** at 1121-22 (footnote omitted).

¶22 Neither the ***Nebraska*** court's decision nor its reasoning are applicable under the circumstances of this case. First, WIS. STAT. § 301.45(2)(a)6m. does not require registrants to consent to either a search of his or her computer or electronic communication device or to the installation of monitoring software. Further, § 301.45(2)(a)6m. does not require the registrant to "constantly update the government about when and where they post content to

Internet sites and blogs." *See Nebraska*, 898 F. Supp. 2d at 1122. The Wisconsin statute is not nearly as onerous as the Nebraska statute.[7]

¶23 Numerous state and federal courts have also weighed in on this debate, with varying results based on statutes with divergent provisions. *Packingham v. North Carolina* is the United States Supreme Court's most recent foray into the domain of regulating sex offenders on the Internet. In *Packingham*, a defendant challenged his conviction on First Amendment grounds based on a statute that prohibited him from accessing "a commercial social networking Web site where the sex offender knows that the site permits minor children to

---

[7] Within his arguments on his as-applied challenge, Jackson also argues that the courts' decisions in *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014), *Millard v. Rankin*, 265 F. Supp. 3d 1211 (D. Colo. 2017), and *White v. Baker*, 696 F. Supp. 2d 1289 (N.D. Ga. 2010), require a finding that the sex offender registry statute is unconstitutional. Although we do not address the merits of Jackson's as-applied challenge, we will briefly address why these cases are distinguishable. In *Harris*, the Ninth Circuit concluded that California's Internet reporting requirements chilled protected speech for three reasons: "the Act does not make clear what sex offenders are required to report, there are insufficient safeguards preventing the public release of the information sex offenders do report, and the 24-hour reporting requirement is onerous and overbroad." *Harris*, 772 F.3d at 578. Unlike the statute in *Harris*, the Wisconsin statute contains a presumption of nondisclosure of a registrant's Internet identifiers and does not allow widespread dissemination of the information as Internet identifiers may only be disclosed upon individual request and when "necessary to protect the public." *See* WIS. STAT. § 301.46(2)(e). Further, the statute at issue in *Harris* only provided a 24-hour reporting period, *Harris*, 772 F.3d at 581-82, while the Wisconsin statute provides the registrant ten days to report changes, WIS. STAT. § 301.45(4).

*Millard* is an Eighth Amendment case; thus, the analysis focused on the punitive nature of the statute. *Millard*, 265 F. Supp. 3d at 1223, 1229. Therefore, the limited discussion regarding the First Amendment is inapplicable.

Finally, *White* involved a Georgia statute that allowed release of registrants' Internet identifiers for "law enforcement purposes" as well as "to protect the public." *White*, 696 F. Supp. 2d at 1310-11. This case is also distinguishable as, like the statute in *Harris*, the statute allowing for dissemination of registrants' information was much broader and required registrants to update information within seventy-two hours. *White*, 696 F. Supp. 2d at 1294. More importantly, the statute in *White* also required registrants to provide passwords in addition to usernames and e-mails, *id.* at 1295, which the Wisconsin statute does not require.

become members or to create or maintain personal Web pages." ***Packingham***, 137 S. Ct. at 1733 (citation omitted). The Supreme Court applied intermediate scrutiny and determined that the North Carolina statute was too broad in restricting online conduct:

> [T]he statute here enacts a prohibition unprecedented in the scope of First Amendment speech it burdens. Social media allows users to gain access to information and communicate with one another about it on any subject that might come to mind. By prohibiting sex offenders from using those websites, North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge. These websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard.

*Id.* at 1737. Importantly, the Court cautioned that "this opinion should not be interpreted as barring a State from enacting more specific laws than the one at issue." ***Id.*** In ***Packingham***, it was the sweeping criminalization of *access* to the Internet that doomed the North Carolina statute.

¶24    WISCONSIN STAT. § 301.45(2)(a)6m. is distinguishable from other state statutes found unconstitutional. For example, unlike the North Carolina statute at issue in ***Packingham***, § 301.45(2)(a)6m. does not prohibit a registrant from using social media websites or the Internet in general. Neither does it require a registrant to provide passwords for his or her usernames or e-mails. *See **White v. Baker***, 696 F. Supp. 2d 1289, 1308 (N.D. Ga. 2010). Wisconsin's registry requirements also provide a registrant ten days to report any changes to his or her information. *See **Doe v. Harris***, 772 F.3d 563, 581-83 (9th Cir. 2014) (finding requiring that registrants report changes within twenty-four hours was "onerous and overbroad"); ***Doe v. Snyder***, 101 F. Supp. 3d 672, 704 (E.D. Mich. 2015) (concluding in-person, three-business-day reporting requirement "imposes a

14

substantially greater, and apparently unnecessary, burden on protected First Amendment speech").

¶25 Additionally, several courts have found sex offender registry provisions similar to WIS. STAT. § 301.45(2)(a)6m. constitutional. *See Doe v. Shurtleff*, 628 F.3d 1217, 1224-26 (10th Cir. 2010) (concluding that sharing of Internet identifiers "among law-enforcement agencies, not the public at large, and only for the recited law-enforcement purposes" did not chill speech and was not overbroad); *People v. Minnis*, 2016 IL 119563, ¶48 (finding Internet identifier statute not overbroad); *Ex parte Odom*, 570 S.W.3d 900, 909 (Tex. Crim. App. 2018) ("Texas's statute does not prohibit sex offenders from accessing any sites; it only requires reporting of their online identifiers…. [T]he speech remains anonymous to its intended audience; only the government and certain third-party providers have the ability to determine the speech's author."); *Coppolino v. Noonan*, 102 A.3d 1254, 1284 (Pa. Commw. Ct. 2014) (determining provisions do not burden right to anonymous speech and are not overbroad as statute does not allow general public disclosure of information).

¶26 We conclude that WIS. STAT. § 301.45(2)(a)6m. survives intermediate scrutiny and is not overbroad. In addition to the above, we further note that the statute neither unnecessarily chills anonymous speech nor does it operate as a prior restraint on speech[8] as it does not require the registrant to update the registry information prior to engaging in protected speech or disclose to law

---

[8] A prior restraint on speech exists where protected expression is contingent upon the approval of government officials. *See Near v. Minnesota*, 283 U.S. 697, 711-13 (1931); *United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000) ("A prior restraint on expression exists when the government can deny access to a forum before the expression occurs.").

enforcement every time he or she updates content on a website. *See Shurtleff*, 628 F.3d at 1225 (noting that this retroactive operation constitutes an example of narrow tailoring); *see also Peterson v. National Telecomms. & Info. Admin.*, 478 F.3d 626, 632 (4th Cir. 2007) ("Speech is chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a pre-condition to expression. In other words, the First Amendment protects anonymity where it serves as a catalyst for speech." (citing *Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 199 (1999))).

¶27    While the reach of WIS. STAT. § 301.45(2)(a)6m. is broad (requiring registrants to report "every Internet user name the person uses, and the name and Internet address of every public or private Internet profile the person creates, uses, or maintains"), that fact does not make the statute unconstitutional. Under intermediate scrutiny, a content-neutral speech regulation "need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied 'so long as the … regulation promotes a substantial government interest that would be achieved less effectively absent the regulation,'" provided "the means chosen are not substantially broader than necessary to achieve the government's interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 798-800 (1989) (alteration in original; footnote and citation omitted); *see also Minnis*, 2016 IL 119563, ¶¶46-49 (noting that courts that have declared sex offender Internet disclosure requirements overbroad have "failed to recognize the breadth necessary to protect the public" and "failed to engage in the comparative analysis of whether the chilling effect was substantially broader than that required by the statutory purpose"). Here, § 301.45(2)(a)6m. effectively serves the State's substantial interest in protecting the public from recidivist sex offenders, and without this provision that substantial interest would not be served

as well. *See* ***Ward***, 491 U.S. at 800. We also agree with the circuit court that narrowing the statute further by "[d]esignating one type of Internet use or electronic communication as 'reporting required' and another type as 'not reporting required' is not feasible due to the ever-evolving capabilities of electronic communication and its use by technologically savvy individuals."

¶28 Of import is the fact that a registrant's Internet identifiers are not subject to unrestricted public disclosure. Not only does the statute contain a presumption that a registrant's Internet identifiers will not be made public, but the information may only be disseminated to "an entity in the … community … that is entitled to request information under [WIS. STAT. § 301.46(4)]" to members of the general public who submit a request for information "concerning a specific person" under § 301.46(5), or "to members of the general public if, in the opinion of the police chief or sheriff, providing that information is necessary to protect the public." Sec. 301.46(2)(e), (4), (5). The information under subsec. (5) would be distributed on an individual basis, concerning one specific offender, would only be released to the entity requesting said information, and only "if, in the opinion of the department or the police chief or sheriff, providing the information is necessary to protect the public." Sec. 301.46(5)(a). Thus, there is no unrestricted disclosure of a registrant's Internet identifiers to the general public. Accordingly, Jackson has failed to meet his burden to demonstrate substantial overbreadth exists.

¶29 For the foregoing reasons, we conclude that WIS. STAT. § 301.45(2)(a)6m. does not violate the First Amendment as it is narrowly tailored to serve the government's significant interest in protecting the public from recidivist sex offenders and is not overbroad.

*By the Court.*—Judgment and order affirmed.