COURT OF APPEALS
DECISION
DATED AND FILED

May 26, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2069-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF335

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JASON W. KASTEN,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Affirmed*.

Before Reilly, P.J. Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Jason Kasten appeals from a judgment convicting him of bomb scares and disorderly conduct, both as a repeater.  On appeal, he argues that his due process rights were violated when law enforcement failed to request and preserve video surveillance footage from the crime scene, and a new trial is required because the circuit court misapplied the law requiring that a bomb scare must be a "true threat."  We disagree and affirm.

¶2    Kasten pled guilty to disorderly conduct, but he had a bench trial on the bomb scares charge, WIS. STAT. § 947.015 (2017-18).[1]  Section 947.015 states:  "Whoever intentionally conveys or causes to be conveyed any threat or false information, knowing such to be false, concerning an attempt or alleged attempt being made or to be made to destroy any property by the means of explosives is guilty of a Class I felony."  The statute has been construed to apply only to "true threats."  *State v. Robert T.*, 2008 WI App 22, ¶16, 307 Wis. 2d 488, 746 N.W.2d 564.  The following legal standard is applied to determine whether a defendant made a "true threat:"

> A true threat is determined using an objective reasonable person standard.  A true threat is a statement that a speaker would reasonably foresee that a listener would reasonably interpret as a serious expression of a purpose to inflict harm, as distinguished from hyperbole, jest, innocuous talk, expressions of political views, or other similarly protected speech.  It is not necessary that the speaker have the ability to carry out the threat.  In determining whether a statement is a true threat, the totality of the circumstances must be considered.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

*Id.*, ¶11, *quoting State v. Perkins*, 2001 WI 46, ¶29, 243 Wis. 2d 141, 626 N.W.2d 762. To determine whether a true threat has been made, "the trier of fact should consider the full context of the statement, including all relevant factors that might affect how the statement could reasonably be interpreted." *Perkins*, 243 Wis. 2d 141, ¶31.

¶3 The foregoing was the law to be applied to the facts found by the circuit court. We conclude that the court's findings are supported in the record, and credibility determinations were for the circuit court to make. *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 (citation omitted) (the circuit court "is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony").

¶4 The circuit court deemed credible the testimony of K.S., a director of operations who happened to be at the Burger King conducting a manager training session when Kasten had a workplace disagreement with his supervisor, R.B. R.B involved K.S. in her conflict with Kasten because Kasten was throwing things, acting very aggressively and was, as R.B. described him, "out of control." As K.S. encountered Kasten, he told her, "I'm going to blow this fucking place up." At that point, K.S. told R.B. they had to call the police. When Kasten made this threat, K.S. believed he was serious and he made her nervous, particularly because Burger King uses gas broilers. K.S. observed customers leaving the premises after Kasten's threat.

¶5 The circuit court found that even though Kasten made the bomb threat intentionally, he did not intend to blow up the building, i.e., Kasten believed the threat was false. Kasten made that threat within K.S.'s hearing, and she

reacted to the threat with great concern. To these facts the court applied the "true threat" analysis:

> I don't think it's hyperbole. It's certainly not jest. It's not innocuous. It's not a political view. But it's incongruent with a false threat. So I think that's where the appeal may lie. But it's not hyperbole. I think he said it in anger. Maybe he didn't mean it later, but he said it to scare them, and under the statute that seems to be enough. So for that reason, I believe the state has proven this beyond a reasonable doubt.

¶6    On appeal, Kasten challenges the circuit court's application of the "true threat" legal standard to the evidence adduced at trial, claiming that the circuit court applied a subjective standard rather than the required objective standard. In concluding that the circuit court applied the proper legal standard to the facts, we look to *Robert T.*

¶7    In *Robert T.*, the defendant telephoned the police with a bomb threat directed at the high school he attended. *Robert T.*, 307 Wis. 2d 488, ¶2. After being identified on the school's surveillance footage as the caller, the defendant admitted making the call because "[h]e was bored." *Id.* In rejecting the defendant's claim that he did not make a true threat, the court noted that "the police who responded to Robert T.'s phone call believed the threat was real. Also, Robert T. apparently intended to frighten the listener; thus, his call appears to fall within the ambit of a 'true threat.'" *Id.*, ¶16.

¶8    As in *Robert T.*, Kasten made a bomb threat, and the circuit court could have reasonably inferred under all of the circumstances that Kasten "would reasonably foresee that a listener would reasonably interpret as a serious expression of a purpose to inflict harm." *Id.*, ¶11 (citation omitted). K.S., who had experienced the totality of the circumstances, including Kasten's aggressive

and out-of-control demeanor, reacted to the threat with alarm and the police were summoned. The court applied the correct legal standard, and that standard was satisfied by the court's findings. Kasten's grounds for a new trial are not supported in the record.

¶9 Kasten next argues that the circuit court should have granted his motion to dismiss due to a due process violation arising from the State's alleged failure to preserve apparently or potentially exculpatory evidence: the surveillance video from the Burger King cameras.

¶10 In order to prevail on his due process claim, Kasten had to show "that that evidence was either apparently exculpatory or that the State acted in bad faith by destroying evidence that was potentially exculpatory." *State v. Luedtke*, 2015 WI 42, ¶41, 362 Wis. 2d 1, 863 N.W.2d 592. Whether Kasten established a due process violation presents a question of law we decide independently of the circuit court. *Id.*, ¶37. We accept the circuit court's findings of fact as long as they are not clearly erroneous. *Id.*

¶11 In relation to Kasten's motion to dismiss, operations director K.S. testified that there was video surveillance at the Burger King, and she knew how to retrieve video from it. However, the cameras neither captured audio nor covered the hallway between the register area and the back of the restaurant. Kasten made the threat while in that hallway, out of sight of the video cameras. Burger King retains video footage for thirty days from its recording date, and the

video of the day in question no longer exists.[2] K.S. did not recall if she was asked by law enforcement for access to the video. The investigator testified that he never viewed any video from the Burger King and was not aware that video ever existed.

¶12 The circuit court found that Kasten did not show that the State acted in bad faith because the video was never within the State's control, and there was no evidence as to whether the video was exculpatory. Furthermore, in the absence of audio and in the presence of Kasten's concession that he made the threat and engaged in disorderly conduct, the video, even if it had existed and had been collected during the investigation, would have added little information to the case.

¶13 The circuit court's findings of fact are supported in the record and are not clearly erroneous. We agree with the circuit court that there is no evidence of any apparent or potential exculpatory value to the video because the video lacked audio and did not cover the area where Kasten made the threat. Kasten offered no evidence of bad faith, i.e., that the investigator was "aware of the potentially exculpatory value or usefulness of the evidence [the investigator] failed to preserve" or that the investigator "acted with official animus or made a conscious effort to suppress exculpatory evidence." *Id.*, ¶46 (citation omitted). Finally, law enforcement does not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable significance in a particular prosecution." *Id.*, ¶44 (citation omitted).

---

[2] The incident occurred on April 24, 2018; the criminal complaint was generated on or about June 12, 2018, after a charging decision was made. The complaint was filed on July 2, 2018. The video would no longer have been available by the time the State generated the complaint.

¶14     Kasten did not meet the *Luedtke* requirements to show a due process violation.  Therefore, the circuit court did not err when it denied Kasten's motion to dismiss.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.